THE PEOPLE OF THE STATE OF NEW YORK ex rel. TIFFANY & CO., Relator, v. FRANK CAMPBELL, late Comptroller of the State of New York, and JAMES A. ROBERTS, Comptroller of the State of New York, Respondents.

*Exemption of manufacturing corporations from taxation under section 3 of chapter 542 of the Laws of 1880 — how restricted by chapter 353 of the Laws of 1889 — construction of statutes.*

Under the provisions of section 3 of chapter 542 of the Laws of 1880, prior to the passage of chapter 353 of the Laws of 1889, manufacturing corporations doing business within the State of New York, whether incorporated under the laws of the State of New York or of any foreign State or country, were exempt from tax imposed under such act, without any restriction upon their doing business out of the State or transacting other business within the State.

The Legislature, by chapter 353 of the Laws of 1889, amending chapter 542 of the Laws of 1880, intended to apply a new rule to the taxation of domestic and foreign manufacturing corporations, and, by the passage thereof, the exemption of manufacturing corporations from taxation contained in section 3 of chapter 542 of the Laws of 1880 was restricted. Such amendment requires that a corporation, in order to entitle it to claim the exemption, shall be wholly engaged in manufacturing within the State of New York.

In construing an act of the Legislature, if doubtful or uncertain language is employed, the court, for the purpose of arriving at the legislative intent, may properly look for the motive that induced the Legislature to make the enactment.

CERTIORARI issued out of the Supreme Court and attested on the 27th day of January, 1894, directed to Frank Campbell, late Comptroller of the State of New York, and James A. Roberts, Comptroller of the State of New York, commanding them to certify and return under their hands and seals their respective proceedings in relation to the tax assessed upon the capital stock of the relator.

*Charles E. Miller* and *Norton Chase*, for the relator.

*John W. Hogan*, for respondent Roberts.

*Nathaniel W. Norton*, for respondent Campbell.

96 PEOPLE ex rel. TIFFANY & CO. *v.* CAMPBELL.

THIRD DEPARTMENT, JULY TERM, 1894. [Vol. 80.

MAYHAM, P. J. :

Tiffany & Co. is a ·domestic corporation created under the General Manufacturing Act of 1848, with its principal office and place of business in the city of New York, having a capital stock of $2,400,000, and a surplus, during the period from 1888 to 1891 inclusive, of about $1,000,000, employed as capital in its business.

In July, 1892, the Comptroller settled an account against that corporation for tax for twelve years prior to November 1, 1891, aggregating $237,000, the corporation having hitherto failed to make a report to that officer.

In March, 1893, Tiffany & Co. made application under the statute to the Comptroller for a revision and resettlement of its accounts for taxes so assessed against it.

Upon a hearing on such application testimony was taken, and on the 28th of December, 1893, the Comptroller made and filed his decision, wherein he determined that this corporation was, prior to 1889, exempt from taxation, but that it was taxable during the years 1889, 1890 and 1891, and fixed the amount of the tax during that period at $6,000.

To review that determination the relator, Tiffany & Co., sued out a writ of certiorari, and now claim that as a domestic manufacturing corporation it is wholly exempt from taxation under the act of 1848, and the various acts amendatory thereof, and that the provisions of chapter 353 of the Laws of 1889, amending the act of 1880, have no application to it.

The Attorney-General, on behalf of the State, also seeks to review by certiorari the determination made by the Comptroller by which he reduced this tax to $6,000. We shall first consider the certiorari of Tiffany & Co. The question presented by this certiorari is, " Is Tiffany & Co. wholly exempt from taxation under the statute ? "

In answering this question a brief examination of the statutes out of which this question arises is necessary.

The first statutory exemption to which our attention has been directed is section 3 of chapter 542 of the Laws of 1880, which provides as follows : " Every corporation, joint-stock company or association whatever, now or hereafter incorporated under any law of this State, or now or hereafter incorporated by any other State or country, and doing business in this State, except savings banks and

PEOPLE ex rel. TIFFANY & CO. *v.* CAMPBELL. 97

Hun.]                THIRD DEPARTMENT, JULY TERM, 1894.

institutions for savings, life insurance companies, banks and foreign insurance companies and manufacturing corporations, carrying on manufacture within this State, shall be subject to and pay a tax."

By this section manufacturing corporations doing business within this State, whether incorporated under the laws of this State or of any foreign State or country, are clearly exempted from tax imposed under the act of 1880, and that too without any restrictions upon their doing business out of the State or transacting other business within the State.

That exemption was not restricted or in any way affected by chapter 361 of the Laws of 1881, amending in some respects the act of 1880. This act was again amended in some particulars by chapter 359 of the Laws of 1885, but the exemption from taxation of manufacturing corporations, incorporated under the laws of this State and doing business therein, was not affected by such amendment.

The act was next amended by chapter 353 of the Laws of 1889. By this chapter 542 of the Laws of 1880 was amended so as to read as follows : " Every corporation, joint-stock company or association whatever, now or hereafter incorporated, organized or formed, under, by or pursuant to law in this State, or in any other State or country and doing business in this State, except only savings banks and institutions for savings, life insurance companies, banks, foreign insurance companies, manufacturing or mining corporations, or companies *wholly engaged in carrying on manufacture* or mining ores *within this State, and* agricultural and horticultural societies and associations, which exception, however, shall not include gas companies, etc.   *   *   *   shall be liable to and shall pay a tax."

Prior to the act of 1889 manufacturing corporations were exempted from this tax if they were incorporated under the laws of this State, or of any other State or country, and doing business in this State.

The manifest object of the legislation upon this subject, as appears by the legislation itself, and the construction put upon it by the courts, was, by granting these corporations exemption from taxation, to furnish inducements to productive industries to locate their plants and carry on their business in this State, and thus contribute to its

98  PEOPLE ex rel. TIFFANY & CO. *v.* CAMPBELL.

THIRD DEPARTMENT, JULY TERM, 1894.                    [Vol. 80.

general prosperity and aggregate wealth. But this inducement, liberal as it was, did not, in all instances, secure to the State the desired advantage.

It is quite apparent that the Legislature, in passing the act of 1889, sought to guard against corporations availing themselves of this immunity from taxation, by organizing under the laws of this State in a name and character which under the statute would exempt them from the franchise tax, and at the same time engage in a business, claimed to be incidental to the protected business in this State, or the same kind of business outside of the State, and thus to a great extent escape taxation.

If we are right in assuming that the policy of the original act of exemption was to foster and encourage manufacturing in the State, we may in like manner assume that it sought, by incorporating in the act the word " wholly," for the purpose of more effectually accomplishing that object, by compelling corporations entitled to the exemption to conduct a business wholly within this State or lose their right to the exemption, and for the same reason to employ its capital in the business, to encourage which the Legislature has deemed to be for the interest of the State, and hence all corporations within the State not coming within this class the Legislature has seen fit to tax. It can hardly be maintained that the Legislature intended to confer the advantages of exemption from taxation on a manufacturing corporation, and allow such corporation to employ its capital in business in competition with other corporations, companies or individuals, whose business of the same character is liable to be taxed. In interpreting an act of the Legislature, if doubtful or uncertain language is employed, the court may properly look for the motive that induced the Legislature to make the enactment for the purpose of arriving at the legislative intent. (*People ex rel. Brush Electric Co.* v. *Wemple,* 129 N. Y. 513.)

But if we are to give the word " wholly " its full literal significance, and apply it to manufacturing corporations within this State, no real doubt or ambiguity is left in the statute which could make it necessary to invoke any technical rule of construction. The plain import of the language would be to deprive manufacturing corporations, incorporated under the laws of this or any other State, and doing business partly in this and partly in another State, of the

PEOPLE ex rel. TIFFANY & CO. v. CAMPBELL. 99

Hun.]                    THIRD DEPARTMENT, JULY TERM, 1894.

benefits of this exemption. But it is insisted by the learned counsel for the relator that the word "wholly," used in the amendment of the act of 1880, by section 353 of the Laws of 1889, does not refer to manufacturing corporations, but relates only to mining ores within this State. The language of the statute, with its punctuation, is as follows: "Manufacturing or mining corporations, or companies *wholly* engaged in carrying on manufacture, or mining ores within this State." Did the language employed mean "manufacture of ores" and "mining of ores," or did the word "manufacture" relate to those industries generally known, making from raw material manufactured articles, as designated from another industry known as digging from the soil deposits of metallic substances?

I am clearly of the opinion that both industries were required in this statute to be wholly carried on within this State, and that the word "wholly" required the corporations engaged in these several industries to confine their operations within this State in order to make the exemption available.

Prior to the enactment of the amendment of 1889 these exempted corporations, whether foreign or domestic, were entitled to exemption if they were doing business within this State, although they were also engaged in their business out of this State; but if they did no business in this State, but carried on their business abroad, they were liable to taxation. (*People* v. *Horn Silver Mining Co.*, 105 N. Y. 76–78.)

The effect of the amendment of 1889 is well illustrated in the case of *The People ex rel. Seth Thomas Clock Co.* v. *Wemple* (133 N. Y. 323–325). That was a foreign corporation organized in the State of Connecticut, and doing business partly in Connecticut and partly within the State of New York, from 1880 to 1889, and its average annual business in New York was from $16,000 to $20,000, and for the same period its average annual business in Connecticut was from $500,000 to $700,000 a year, and the Court of Appeals held that prior to the amendment of 1889 it was exempt from taxation because it was a manufacturing corporation carrying on business in this State, and the court in that case, in discussing the effect of the amendment of 1889, uses this language: "So also a foreign manufacturing corporation, actually engaged in manufacturing within this State, was exempt from taxation, the same as a domestic cor-

poration of the same character." This exemption was restricted by chapter 353 of the Laws of 1889 which requires that the corporation, in order to be entitled to claim the exemption, shall be "wholly engaged in carrying on manufactures within this State." The Legislature in passing this amendment intended to apply a new rule to the taxation of foreign manufacturing corporations.

This last remark was doubtless because the court had in that case a foreign corporation under consideration, and was not intended to distinguish between a foreign and domestic corporation in the application of the new rule created by this amendment.

Indeed, no distinction could be made between a domestic corporation and a foreign corporation doing business in this State in the application of the amendment of 1889 in express terms, and in the same sentence embraces both foreign and domestic corporations, and in this respect places them under the same rule. The language is "organized, or formed under, by, or pursuant to law in this State, or in any other State or country, and doing business in this State." We are, therefore, by the very language of the act itself, required to apply the same rule to a domestic corporation as was applied in the Clock Company case by the Court of Appeals and to hold that the Legislature have established by the amendment of 1889, and have "intended to apply a new rule to the taxing of domestic manufacturing corporations."

Not only the same language in the statute as to domestic and foreign corporations is employed, but the same consideration of State policy is applicable to domestic and foreign corporations. Judge O'BRIEN, in discussing the probable object of the Legislature upon that question of policy, uses this language: "If the Legislature, in providing that manufacturing corporations should be exempt from taxation, intended, as it probably did, to encourage and foster manufactures within the State, the policy of the law would apply as well to a corporation carrying on a small business as to one engaged in larger and more extensive operations," and we may add that this consideration will apply as well to domestic as to foreign corporations.

There is no distinction in the statute between domestic and foreign corporations, and we see no reason for any distinction on the ground of State policy, and think that the reasoning of the court in

the Seth Thomas Clock Company case applies with equal force to the case at bar.

The Comptroller, upon the evidence, finds that the relator employed a portion of its capital outside of its manufacturing business, as follows: For the year 1889, thirteen per cent, $312,000; for the year 1890, twelve per cent, $288,000; for the year 1891, fifteen per cent, $360,000; on which he assessed a tax as follows: 1889, on $312,000, amounting to $1,950; 1890, on $288,000, amounting to $1,800; 1891, on $360,000, amounting to $2,250.

We are clearly of the opinion that the relator, by its dealings with its capital, in not confining its use to manufacturing wholly within this State, has deprived itself under chapter 353 of the Laws of 1889 of its immunity from taxation, which it had before that time enjoyed under the act of 1880, and that the Comptroller was authorized and required under the act of 1889 to impose a tax on the relator.

The writ of certiorari must be quashed, with fifty dollars costs and disbursements.

PUTNAM, J., concurred; HERRICK, J., not acting.

Writ of certiorari quashed, with fifty dollars costs and disbursements.