PEOPLE ex rel. EPPENS, SMITH & WIEMANN CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department. May 2, 1900.)

1. CORPORATIONS—TAXATION—REVISION—INCREASE OF TAXES.

Laws 1889, c. 463, provides that the comptroller may at any time revise and readjust any account for taxes settled against any corporation, when it shall appear that taxes have been illegally paid, and resettle them according to the law and facts. A foreign corporation, with a capital stock of $1,000,000, had paid taxes for preceding years on the basis that the capital stock employed within the state was $200,000, and had paid a license tax on the basis of $250,000 under Laws 1895, c. 240, providing that foreign corporations shall pay a license fee of one-eighth of 1 per cent., on the basis of the capital stock employed within the state. *Held*, on its application for a revision and readjustment, that the comptroller had no authority to increase the amount of the taxes originally fixed by him.

2. SAME—REDUCTION—CAPITAL EMPLOYED IN FOREIGN COMMERCE.

A foreign corporation doing business in the state is not entitled to a reduction of the tax on the capital stock employed in the state, on the ground that it is employed in foreign commerce.

Certiorari by the people, on the relation of the Eppens, Smith & Wiemann Company, against James A. Roberts, as comptroller, to review the determination of the comptroller on a revision and resettlement of an account against plaintiff for taxes. Reversed.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

Edmund L. Cole and John B. Green, for relator.
John C. Davies, Atty. Gen., for respondent.

PER CURIAM. This relator seeks to review the revision by the comptroller of the account for taxes which he had audited and stated against such relator for the years 1891, 1893, 1894, and 1895, under the provisions of chapter 542 of the Laws of 1880 and the amendments thereto. The relator is a foreign corporation, organized under the laws of New Jersey, with a capital stock of $1,000,000. Its business is the importing and selling of tea, coffee, and spices, and its only place of business is in the city of New York. The comptroller had settled the account for taxes for the year ending November 1, 1891, upon the basis that its capital stock employed within this state was $200,000; and for the taxes accruing in the years 1893, 1894, and 1895, upon the basis that its capital stock employed in this state in each of such years was $250,000. The rate at which the tax was assessed for the year 1891 was 1½ mills, in 1893 it was 2⅜, in 1894 it was 1¾ mills, and in 1895 it was 1½ mills. The amount of the tax so charged against the relator for the year 1891 was $300; for the year 1893, $593.55; for the year 1894, $437.50; and for the year 1895, $375. Such tax for 1891 was paid April 9, 1892, the one for 1893 was paid January 8, 1894, and that for 1894 was paid January 16, 1895. On March 31, 1896, the relator filed a petition to the comptroller, asking that such accounts for the aforesaid years be revised and readjusted. And in such proceeding on July 10, 1896, a

hearing was had, which finally resulted in a determination of the
comptroller, rendered on June 7, 1897, whereby the account for the
taxes of such years was revised and readjusted as follows: For
the years 1891 and 1895 the tax was fixed at $2,000, based upon the
conclusion that the capital stock employed in this state was $1,000,-
000, and the rate adopted was 2 mills. For the year 1893 the tax
was fixed at $2,375, upon the theory that the amount of capital stock
employed in this state was $1,000,000, and the rate was fixed at
2⅜ mills. For the year 1894 the amount of tax was fixed at $1,750,
the amount of capital stock so employed was fixed at $1,000,000,
and the rate adopted was 1¾ mills. In the year 1895 the comptrol-
ler also assessed against the relator a license tax under the pro-
visions of chapter 240, Laws 1895, amounting to $312.50, based upon
the determination that the value of the capital stock employed in
the state was $250,000, and at the rate of 1¼ mills. Upon such re-
adjustment such tax was increased to $1,250, upon the theory that
the capital stock so employed within the state was $1,000,000.

By chapter 463 of the Laws of 1889 it is provided that the comp-
troller may at any time revise and readjust any account theretofore
settled against any person, association, corporation, etc., by himself
or any preceding comptroller, for taxes arising under the act of
1880 and its amendments, "whenever it shall be made to appear by
evidence submitted to him that the same has been illegally paid
or so made as to include taxes which could not have been lawfully
demanded, and shall resettle the same according to law and the
facts, and charge or credit as the case may require the difference,
if any, resulting from such revision and resettlement upon the cur-
rent accounts of such person, association, corporation or joint-stock
company." Such statute remained in force until the passage of
chapter 908 of the Laws of 1896, which took effect June 15, 1896,
when it was repealed, and section 195 of the latter act was evidently
intended to take its place. By this later section it is provided that
the application for a readjustment must be made within a year, and
some other changes are made in the phraseology which render it
doubtful whether any other or further change was intended. That,
however, need not now be determined, inasmuch as the petition for
this readjustment was filed some time before the passage of the
act of 1896, and the proceedings thereunder are therefore to be
controlled by the law of 1889 above referred to. See section 31 of
the statutory construction act (Laws 1892, c. 677). It is now claimed
by the relator that, in readjusting an assessment under the provi-
sions of such act of 1889, the comptroller had no authority to in-
crease the amount of the tax as originally fixed by him. This posi-
tion, we are of the opinion, is well taken. It is to be noticed that
he is given authority to readjust his account whenever it is made
to appear that such account includes taxes which could not have
been lawfully demanded, or, in the event that they have been paid,
that they have been illegally paid or exacted. His right to interfere
with his account seems to depend entirely upon the establishment
of these facts. If the party complaining shall fail to convince him
that such unlawful taxes have been either paid or included within

the account, then the condition does not exist under which he may revise or readjust it, and the account must stand as already fixed. The scheme of the statute seems to be to give to the party assessed an opportunity to produce to the comptroller evidence, and to be heard, upon the questions which are presented by the account as it has been settled and assessed against him. He then for the first time has the opportunity to show to the comptroller that the account is unlawful, and this review seems to have been authorized, to give him such an opportunity. The statute does not suggest that the comptroller may call the party taxed before him, to the end that a new and larger assessment may be made, but it distinctly provides that it is only when illegal taxes have been included in the account that the revision may be made. The charge that they are illegal, and that the account contains too much (in short, that the taxes are already too large), must be made to appear as the condition of a readjustment; and hence we think that, when the party taxed fails to establish that fact, the comptroller may do no more than deny the application to readjust. He has no authority to go further and levy a new and larger tax. It is claimed that the phrase, he shall "charge or credit," as the case may require, the difference, etc., indicates that he may increase the amount of the tax. But such phrase evidently applies to the state of the account as it shall then exist between the state and the party taxed. If he has paid the illegal tax, the overpayment shall be credited on his account with the state. Nothing is repaid to him. If he shall not have then paid the original tax, "the difference" (that is, the diminished amount, if it is diminished) shall be charged against him. The meaning of this provision simply is that, in the event that the tax is readjusted, the account shall be altered to correspond to the resettlement. The statute is so explicit with reference to the conditions under which the comptroller may readjust the tax, that we cannot give to such phrase the extended meaning that the defendant claims for it. We conclude, therefore, that the comptroller was in error in increasing the taxes beyond the amount which he had already assessed against the relator.

The question remains whether he should have reduced them. A reduction was asked on the ground that so much of the relator's capital as was employed in foreign commerce was not liable to any taxation whatever. The case of People v. Roberts, 36 App. Div. 597, 55 N. Y. Supp. 950, is an authority against such a claim. It was further claimed that, by the original assessment the amount of capital employed within this state was fixed at too large an amount, because the indebtedness of the relator properly chargeable against the same was not deducted. The facts as they appear upon the rehearing do not sustain that position.

From this view of the case, it results that the comptroller should have refused the application to readjust the account, and should have left it to stand against the relator as originally fixed.

Determination of the comptroller reversed, with $50 costs and disbursements.