PEOPLE ex rel. SYRACUSE IMP. CO. v. MORGAN, Comptroller.

(Supreme Court, Appellate Division, Third Department. March 8, 1901.)

1. TAXATION—CORPORATIONS—FRANCHISE TAX—REASSESSMENT BY COMPTROLLER.

Where an application is made to the comptroller for readjustment and revision of the franchise tax account of a corporation including several years, the fact that the tax assessed for a certain year includes an illegal tax does not give the comptroller jurisdiction to increase the original assessment for a different year.

2. SAME.

Where the assessment of the franchise tax of a corporation is not increased by the comptroller on an application for a revision and read-

justment of the tax account, the revision is not invalid because made on
a different basis from the original assessment.

**3. SAME—EXEMPTIONS.**

> Under Laws 1880, c. 542, § 3, exempting domestic manufacturing cor-
> porations from the license tax, as amended by Laws 1889, c. 353, making
> the exemption only applicable to domestic corporations wholly engaged
> in manufacturing, a corporation engaged in the manufacture of asphalt-
> um compound and in laying pavements is not entirely engaged in manu-
> facture, and hence is not entitled to the exemption.

Certiorari by the people, on the relation of the Syracuse Improve-
ment Company, against William J. Morgan, as comptroller, to re-
view the action of the comptroller in revising and reassessing a tax
account against relator. Determination modified.

The relator is a corporation formed in 1892 under the business corporation
law. In its certificate of its incorporation is stated: "Its object and the
nature of its business is to construct and repair streets, alleys, roads, pave-
ments, sidewalks, crosswalks, gutters, curbing, sewers, bridges and culverts."
In 1896 the comptroller, pursuant to the statute, ordered and stated the ac-
count of the relator's franchise tax at $168.75 for each of the years ending
October 31, 1893, 1894, 1895, and 1896. This amount was reached by assess-
ing at the rate of 1½ mills on $112,500, the amount of the capital stock out-
standing. Upon a petition for a readjustment and revision of that account it
was adjusted so that for the year ending October 31, 1893, the sum of $41.25
was assessed as 1½ mills upon a valuation of capital stock of $27,500. For the
year ending October 31, 1894, the sum of $53.48 was assessed as 1½ mills upon
a valuation of capital stock of $35,650. For the year ending October 31, 1895,
$1,875 was assessed as 50 mills upon an alleged rate of dividend of 200, valu-
ing the capital stock at $37,500. For the year ending October 31, 1896, $187.50
was assessed as 5 mills upon the alleged rate of dividend of 20 per cent.,
valuing the capital stock at $37,500, and $74.25 as 1½ mills upon a valuation of
capital stock of $49,500.

Argued before PARKER, P. J., and KELLOGG, EDWARDS,
SMITH, and CHASE, JJ.

Goodelle & Nottingham (William Nottingham, of counsel), for re-
lator.

John C. Davies, Atty. Gen. (Henry B. Coman, of counsel), for re-
spondent.

SMITH, J. Two questions are raised by the relator's appeal:
First. Had the comptroller authority, upon the revision or readjust-
ment of the tax, to increase the amount thereof, as was done for
the year ending October 31, 1895, and October 31, 1896? Second.
Is the relator a manufacturing corporation wholly engaged in manu-
facturing within the state, within the provisions of section 3 of
chapter 542 of the Laws of 1880, as amended by chapter 353 of the
Laws of 1889?

The first question is, we think, substantially answered by the de-
cision of this court in the case of the Eppens, Smith & Wieman Com-
pany, reported in 51 App. Div. 152, 64 N. Y. Supp. 627. In that
case it was held that, to give jurisdiction to the comptroller to re-
adjust or revise the tax, it must be made to appear that the account
of taxes stated by the comptroller included those which could not
be lawfully demanded, and as, upon the readjustment, no such fact
appeared, the comptroller was unauthorized to increase the tax as-

sessed. It is urged by the attorney general that in the account of taxes stated by the comptroller, and here revised, taxes were included for the years 1893 and 1894, which could not be lawfully demanded; that, with this fact proven, the jurisdiction of the comptroller attached, and the increase added to the assessment for 1895 and 1896 was, therefore, within the power of the comptroller in his revision and readjustment of the account. While, however, the condition to jurisdiction technically exists, it does not necessarily follow that in the permission given to the comptroller by the statute to revise and readjust was intended to be included the right to increase the taxes assessed. As has been held in the Eppens Case, the right to any revision is conditioned upon the fact of the inclusion of some illegal tax in the account. Under the contention of the attorney general, if one dollar of the account is found to be illegally assessed in any year, this fact at once vests power in the comptroller to add any sum he may think proper to the assessment for any other year. If such be the true reading of the statute, we are at a loss to understand why any condition was placed upon the power of the comptroller to revise and readjust, other than the mere moving of the party thinking himself aggrieved. It is hardly conceivable that it was the intention to confer the power to increase an assessment, if some part of the tax had been unlawfully assessed, and otherwise withhold it. The provision of law is the exercise of the supreme power of the state to take from this corporation its property. By settled principles of interpretation the power claimed must be clearly read in the statute. Within this rule of interpretation, it must be held that the inclusion of a single unlawful item in the assessment of any year included in the account vests in the comptroller no greater power to increase the assessment otherwise appearing in the account than if this unlawful item had not been included, and that the increase in the assessment for the years 1895 and 1896 was, therefore, unauthorized.

The relator's contention that the comptroller was unauthorized to change the basis of his assessment for the years 1895 and 1896 is without merit. If the assessment were not in excess of that to which the corporation was lawfully subject, it is not illegally made, whatever rule may have been adopted by the comptroller.

Upon the second question raised, it is argued that the business of the relator is solely that of manufacturing, and that within the governing statute the relator was, during the whole period stated in the account, wholly exempt from taxation. Section 3 of chapter 542 of the Laws of 1880 exempted from the tax here imposed "manufacturing corporations carrying on manufacture within this state." By chapter 353 of the Laws of 1889 this section was amended so as to exempt only manufacturing corporations, or companies wholly engaged in carrying on manufacture within this state. This was the law under which the assessment was made in the account for the years 1893, 1894, and 1895. By section 183 of the general tax law (chapter 908 of the Laws of 1896), a manufacturing corporation was exempt "to the extent only of the capital actually employed in this state in manufacturing and in the sale of the product of such manu-

facturing." The argument of the relator's counsel is, first, that both the preparation of the compound and the making of the pavement are manufacturing, and thus that the corporation is wholly engaged in manufacturing within the state. We may concede, for the argument, that the compounding of the asphalt mixture which is used in constructing the pavement is a process of manufacture. We cannot agree, however, that the preparation of the street for the laying of the pavement and the placing of the pavement thereupon is in any sense a process of manufacture, within the meaning of the statute. It would hardly be contended that the laying of a brick pavement was a process of manufacture, although the brick for the pavement may be manufactured. In the preparation of the asphaltum compound which is used in the pavement it appears that $25,000 of the capital of the relator is employed. Assuming this preparation to be a process of manufacture, the large majority of the capital of the relator is employed in business other than in this manufacture. The relator, therefore, does not reach the condition of the act of 1889, authorizing its exemption from this tax.

It is further contended on relator's behalf that at least $25,000 of the capital should be exempt from taxation under the tax law of 1896, as employed in the business of manufacturing. The tax for the year 1896, as originally stated, was $168.75. We have held that this tax could not, upon this revision, be increased. If we assume that the relator is entitled to exemption upon $25,000 of the capital as employed in the business of manufacture, the amount originally assessed is still within the sum which could properly be assessed for the year 1896. The finding of the comptroller as to dividends declared we think a legitimate inference from the evidence. It is unnecessary, then, to determine whether the preparation of this asphaltum compound used in making the pavement is a process of manufacture, within the meaning of the statute.

These views lead to a modification of the determination of the comptroller by reducing the tax for the years 1895 and 1896 to the amount originally stated by him in his account.

Determination of the comptroller modified so as to reduce the tax assessed for the years 1895 and 1896 to $168.75 for each year, with $50 costs and disbursements to the relator. All concur.