PEOPLE ex rel. EASTERN BERMUDEZ ASPHALT CO. v. MORGAN,
                        Comptroller.

(Supreme Court, Appellate Division, Third Department.  May 21, 1901.)

TAXATION—MANUFACTURING CORPORATION—EXEMPTION — ASPHALT COMPANY—
    RIGHTS.
        Tax Law, § 183, provides that manufacturing corporations shall be
    exempt from the corporate franchise tax to the extent of the capital
    actually employed in this state in manufacturing.  *Held*, that where a
    corporation was engaged in making a composition, by a secret process,
    to be used in building asphalt streets and floors, and the process required
    a plant and appliances for heating the material to an extreme heat, it
    was a manufacturing corporation, within the meaning of the statute,
    though it used all the material it manufactured in performing its own
    contracts.
        Kellogg, J., dissenting.

    Certiorari by the people, on the relation of the Eastern Bermudez
Asphalt Company, directed to William J. Morgan, as comptroller of
the state of New York, commanding him to certify and return to the
.office of the clerk of the county of Albany the accounts and all the
evidence before him on the application of the relator for the revision
and readjustment of the corporation franchise tax imposed upon the
relator for the year ending October 31, 1898, together with all the
papers and proof upon the original statement of such account, and
all proceedings thereon.  Decision of comptroller modified.

    The relator is a corporation organized in 1895 under the laws of the state
of New York.  The certificate of incorporation provides: "The objects for
which it is formed, including the nature of its business, are to do a general
contracting business in reference to pavements, roofs, floors, and otherwise,
and in reference to other lines of business allied or collateral thereto; to
manufacture and prepare asphaltum or other material for use in such busi-
ness; and to do other lawful business that may arise out of the foregoing,
or that the company may deem adapted to its plant, or any part thereof."  The
comptroller imposed a corporation franchise tax upon the relator for the year
ending October 31, 1898, of $75.  A rehearing was had at the comptroller's
office March 7, 1900, and the tax was revised and readjusted by the comp-
troller, and reduced by him to the sum of $49.80.  The relator conducted its
business for the year for which the tax was imposed entirely within the state
of New York.  It has a plant in Brooklyn, consisting of an iron-roofed building,
in which are three melting kettles for melting asphalt, a kettle for heating
oil, and bins and drums for heating and holding the hot materials, all of which
are set in brickwork; also an engine, two boilers, and the machinery neces-
sary to mix the materials and produce a compound, which, when spread on
the surface of a street or floor, will become and remain firm and hard.  Con-
tracts are taken by the relator for paving streets, and in carrying out such
contracts an excavation is made in the street, which is filled first with broken
stones, and then with concrete made of stone, sand, and cement, after which
the compound is carted to and spread upon the concrete foundation.  Floors
are made in a somewhat similar manner.  The compound is made by the
relator taking refined asphalt purchased by it, and putting the same into a
melting tank, where it is heated to about 300° of heat, and mixed with oil
heated to a similar temperature.  Sand is also heated to a temperature of
about 300°, after which ground limestone is mixed with the sand, and the
mixed sand and limestone are again mixed with the oil and asphalt.  The
compound is made of about 10 per cent. of refined asphalt, 1 per cent. of oil,
80 per cent. of sand, and 9 per cent. of ground limestone.  The process of
·heating and mixing the asphalt and oil takes from 8.to 12 hours, and the
mixing of the oil and asphalt with the sand and limestone a shorter time.  The

process is a secret one. The capital stock of the relator is fixed at $75,000 but only $50,000 of the same has been paid in.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

William H. Sage, for relator.

John C. Davies, Atty. Gen., and Henry B. Coman, Dep. Atty. Gen., for defendant.

CHASE, J. This court has recently held (People v. Morgan, 59 App. Div. 302, 69 N. Y. Supp. 263) that the preparation of a street for the laying of a pavement, and placing of the paving thereupon, is not in any sense a process of manufacture, within the meaning of the statute. The statute relating to exemptions, as it existed in 1898, is as follows:

"Banks, savings banks, * * * manufacturing corporations to the extent only of the capital actually employed in this state in manufacturing and in the sale of the product of such manufacturing * * * shall be exempt from the payment of the tax prescribed by section 182 of this chapter." Tax Law, § 183.

Corporations for the purpose of carrying on manufactures were formerly organized under the general manufacturing act of 1848, and other statutes having special reference to the organization of corporations to do a manufacturing business. Such statutes have been repealed, and corporations for the purpose of carrying on any lawful business purpose or purposes, other than a moneyed corporation or a corporation provided for by the banking, the insurance, the railroad, and the transportation corporation laws, are now formed under the business corporations law. There can be no special significance in the words "manufacturing corporations," as they are now used in the tax law. These words should be given their ordinary meaning, and held to apply to all corporations authorized by charter to do a manufacturing business. Even prior to the repeal of the statute of 1848, and the other statutes having special reference to the organization of corporations for manufacturing purposes, these words were construed to relate to corporations actually engaged in manufacturing, and not to corporations organized under any particular act. In People v. Wemple, 129 N. Y. 664, 29 N. E. 812, the court say:

"We do not think it is material how or under what particular statute the relator came into existence as a corporation. The material question is whether during the years for which the tax in question was paid it was engaged in business as a manufacturing company within this state."

See Nassau Gaslight Co. v. City of Brooklyn, 89 N. Y. 409.

The relator in this case was organized as a business corporation. The manufacture of asphaltum for its own use is expressly stated in its certificate as one of the objects of its incorporation, and, so far as its plant is adapted to the manufacture of asphaltum for sale, such business could be conducted within the terms of its articles of incorporation. Was the relator actually employing any of its capital in manufacturing? For the production of the compound, the relator has invested a large amount of capital in the plant. The building and all the apparatus connected therewith is permanent in its nature, and

cannot be moved, except, if taken down, the materials could, in part, be used in rebuilding the plant in another place. The compound is made of different raw materials, to which are applied labor and skill, with the aid of machinery and mechanical appliances, resulting in the production of a new and distinct substance. None of the raw materials alone are of any value for the purpose for which the compound is to be used. The natural products are entirely changed by artificial combination and extreme heat, making a well-known and commonly used material. We are of the opinion that the production of the compound by the relator is manufacturing, within the ordinary meaning of that word, and as that word has been defined by the courts of this state. People v. Morgan, 48 App. Div. 395, 63 N. Y. Supp. 76; People v. Roberts, 51 App. Div. 77, 64 N. Y. Supp. 494; People v. Wemple, 129 N. Y. 543, 29 N. E. 808, 14 L. R. A. 708. Under the statute as it now exists and existed in 1898, only the capital actually employed in manufacturing in this state is exempt from the tax. It is immaterial, therefore, whether the capital so employed is the principal part of the capital of the corporation. Even if the business of manufacturing is only incidental to other lawful business of the corporation, the exemption would still be within the express terms of the statute. The capital of a corporation now lawfully employed in manufacturing in this state, in the regular course of business, is entitled to the exemption, without reference to the extent of the capital so employed. The relator in People v. Roberts, 37 App. Div. 1, 55 N. Y. Supp. 317, had a capital stock of $1,000,000, and was engaged in conducting a department store. This court allowed it a deduction. of $75,000 for capital employed in manufacturing cloaks and other articles in connection with its business of buying and selling merchandise. The court of appeals (People v. Wemple, 133 N. Y. 323, 31 N. E. 238), in construing the phrase "manufacturing corporations carrying on manufacture within this state," as used in the statute as it existed prior to 1889, uses this language:

"If it was carrying on enough of its manufacturing operations in this state, so that it could be said, fairly and reasonably, to be engaged in manufacturing here, then it came within the letter and the spirit of the exemption clause; and neither the comptroller nor the courts had the right to hold that, because only a comparatively small portion of all its manufacturing operations were carried on here, it was not, for that reason, within the exemption. If the corporation, in the ordinary and regular course of its business, in good faith, and not for the purpose of evading the law, was actually carrying on any part of its manufacturing operations here, that was enough. It was not left for the taxing officer or the courts to prescribe how much or what percentage of its whole manufacturing business should be done within this state in order to entitle the corporation to claim the exemption."

The relator in the year 1898 used all the asphaltum manufactured by it in connection with the construction of streets or floors under contract made by it for such construction, and did not sell any of its product so manufactured to others, except as stated. Although the compound must be used before it has been allowed to become hardened, there is no reason why it could not be made to order or sold wherever it could be quickly delivered. Many articles upon the market require immediate delivery after they are manufactured, or they

will become worthless. We do not think the purpose of the statute requires that the relator be refused exemption of the capital actually employed in manufacturing the asphaltum simply because the manufactured product for the year in question was all consumed in carrying out contracts lawfully made by it. The purpose of the statute, as repeatedly held by the courts, is to furnish inducements to productive industries to locate their plants and carry on their business in this state, and thus contribute to its general prosperity and aggregate wealth. Any corporation carrying on manufacturing business within the state must necessarily have visible, tangible property liable, under the general laws of the state, to taxation. People v. Campbell, 80 Hun, 95, 30 N. Y. Supp. 70; Id., 144 N. Y. 166, 38 N. E. 990; People v. Horn Silver Min. Co., 105 N. Y. 76, 11 N. E. 155; People v. Roberts, 4 App. Div. 388, 38 N. Y. Supp. 872. That the making of paving bricks is manufacturing will not be questioned. If the relator were a corporation lawfully engaged in manufacturing paving bricks in this state, should it not be exempt from the tax, to the extent of the capital employed in such manufacturing, even if the paving bricks so manufactured had been consumed in carrying out contracts lawfully made by it in constructing streets and highways? We think a reasonable construction of the statute would require such exemption. The relator is exempt from the corporation franchise tax to the extent of the amount of its capital so employed in the preparation of the compound. It is difficult to determine, from the confused condition of the record, just how much of the capital is employed in such manufacturing, but it appears to be not less than three-fourths thereof.

The determination of the comptroller is modified so as to reduce the tax imposed upon the relator to the sum of $18.75, with $10 costs and disbursements to the relator. All concur, except KELLOGG, J., who dissents.

KELLOGG, J. I dissent on the ground that the relator does not belong to any one of the classes of corporations mentioned in section 183 of the tax law as exempt from tax on capital stock. It is not a "manufacturing corporation." It was not organized as such, nor is it engaged in any manufacturing business. Nor is any part of its capital employed in manufacturing any product for sale, or in the sale of any product it manufactures. The exemption, by the express language of the law referred to, is confined to "manufacturing corporations." In order to claim such exemption, it must show that it belongs in that class, and the meaning of "manufacturing corporation" must be taken in its ordinary sense as applied to a class. A corporation may manufacture some articles for use in its business, and not belong to the class known as "manufacturing corporations." A railroad corporation may use a part of its capital in the manufacture of rolling stock for its own use, such as cars and engines, but that does not make it a manufacturing corporation; nor is the part of its capital so employed exempt under this law. Any improvement company organized as a corporation to do a house-building business, and employing some part of its capital in the manufacture of plaster to con-

struct its houses with, cannot be said to belong, because of that fact, to the class known as "manufacturing corporations," and cannot, in my opinion, have exempted that part of its capital which is employed in this incident to the business which it was organized to do, because the law does not either expressly or impliedly so declare. Had the legislature, instead of designating by name the classes of corporations entitled to the exemption, enacted that "the capital of every corporation, employed in this state, in the manufacture of any product whether for its own use or for sale, and the capital of every corporation employed in this state in the sale of the product by itself manufactured shall be exempt from this tax," then it would have plainly accomplished just what the majority decision in this case declares was intended by the language actually used. The words of a statute are to be given their natural, plain, obvious, and ordinary signification. People v. Roberts, 155 N. Y. 408, 50 N. E. 53, 41 L. R. A. 228. And it seems to me that to make this statute read as suggested is a clear perversion of its meaning. The exemption runs in the language of this tax law to the same classes of corporations as did the exemptions in the act of 1881 (Laws 1881, c. 361), and in almost the same words; and under the law of 1881, in People v. Knickerbocker Ice Co., 99 N. Y. 184, 1 N. E. 670, Danforth, J., says that the exemption "is limited to corporations which are in fact manufacturing corporations, and do carry on manufacture."