(90 App. Div. 588.)

PEOPLE ex rel. FT. GEORGE REALTY CO. v. MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 6, 1904.)

1. CORPORATION — FRANCHISE TAX — CAPITAL STOCK — EMPLOYMENT IN THE STATE.

A corporation having been organized to acquire, hold, and sell real estate, the proceeds of sale of its capital stock, invested in unimproved real estate, is capital stock employed in the state, within Laws 1896, p. 856, c 908, § 182, imposing a franchise tax on such stock.

2. SAME—APPRAISAL—ASSESSMENT.

The sworn appraisal by the treasurer and secretary of the value of a corporation's capital stock is sufficient evidence to support an assessment at a value equal to the appraisal.

3. SAME—APPORTIONMENT.

A franchise tax on the business of a corporation which has done business only 5½ months should be apportioned, and not levied for the full year.

Certiorari by the people, on the relation of the Ft. George Realty Company, to review the proceedings of Nathan L. Miller, state comptroller, in assessing the relator for a franchise tax. Modified and confirmed.

Certiorari issued out of the Supreme Court, and attested on the 30th day of June, 1903, directed to Nathan L. Miller, as comptroller of the state of New York, commanding him to certify and return all and singular his proceedings in assessing the relator for a franchise tax for the year ending October 31, 1902, upon its capital employed within the state during that year, under section 182 of the Tax Law (Laws 1896, p. 856, c. 908).

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Theodore M. Taft, for relator.

John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for respondent.

CHESTER, J. The relator is a domestic corporation organized for the purpose of acquiring, holding, and selling real estate in the city of New York. It was incorporated and commenced to do business about May 14, 1902. It has not paid or declared any dividends. It has a capital of $100,000, of which 994 shares, of the par value of $99,400, have been issued. The amount issued was all used in payment of the purchase price of certain unimproved real estate in that city and for part of the proceeds of a mortgage upon such real estate. If that was not an "employment" of its capital stock within this state, within the

meaning of the tax law, which would subject it to taxation under that law, the relator is enjoying all the benefits of corporate existence and is permitted to exercise its corporate franchises and carry on the very business for which it was incorporated without the payment of any franchise tax. The mere statement of the proposition, it seems to me, carries its own answer. The relator relies upon People ex rel. Niagara River Hydraulic Co. v. Roberts, 30 App. Div. 180, 51 N. Y. Supp. 771, affirmed 157 N. Y. 676, 51 N. E. 1093, in support of its contention that it employed no capital within the state. That was a case where the relator there, as appears by its act of incorporation, was formed for "hydraulic and manufacturing purposes" (Laws 1832, p. 175, c. 116, § 1), and was by its charter made "capable of purchasing, holding, leasing, and conveying any estate, real and personal, for the use of the said corporation." Its entire capital stock was issued in payment of the purchase price of a certain island in Niagara river which was unimproved swamp land, and unproductive, except that about $45 was received annually for the grass crop. The court held, on the authority of People ex rel. Singer Mfg. Co. v. Wemple, 150 N. Y. 46, 44 N. E. 787, that, although its capital was invested here, such capital was not "employed within this state" within the meaning of the statute, and therefore that it was not liable to the franchise tax. In the Singer Case Judge Bartlett, who wrote the opinion of the court, said:

"We decide this case on its peculiar facts, and are not to be understood as in any way changing the rule laid down in People ex rel. Seth Thomas Clock Co. v. Wemple, 133 N. Y. 323 [31 N. E. 238], that the capital stock of a foreign corporation employed in this state is represented by the actual value of its property, whether in money or goods or other tangible things."

So, also, the capital stock of a domestic corporation means the property of the corporation contributed by its shareholders or otherwise obtained by it to the extent required by its charter. Williams v. Western Union Telegraph Co., 93 N. Y. 162–168; Burrall v. Bushwick Railroad Co., 75 N. Y. 211. The capital stock of the relator, so far as issued, represented as it is by the property it purchased with that stock, in which purchase it was used in carrying out one of the purposes of the relator's corporate existence, was clearly employed by it in this state, and cases such as that of the Niagara River Hydraulic Co., supra, and other kindred cases, where the capital exempted from taxation was not necessary to or used for the conduct of the business for which the corporations were organized, but actually withdrawn from such business and otherwise invested, should not serve to exempt from taxation a corporation such as the relator, which comes within the express terms of the statute imposing the tax.

The relator also urges that the comptroller has made an excessive valuation of its capital stock. He assessed it at a valuation of $99,400. He had before him the sworn appraisal of the treasurer and the secretary of the relator fixing its actual cash value at that amount, so that his assessment is not without ample evidence to support it.

The relator, however, had been in existence and exercising its corporate franchises only 5½ months of the year for which it was taxed. The tax was laid for the entire year. It should have been apportioned

upon the time it had exercised its franchises. People ex rel. Mutual Trust Co. v. Miller, 177 N. Y. 51, 69 N. E. 124. The tax as laid, based upon a valuation of $99,400, at 1½ mills on the dollar, for the entire year amounted to $149.10. For 5½ months, at that rate, it would be $68.34, and it should be reduced to that amount.

Determination of the Comptroller modified by reducing the tax to $68.34, and, as so modified, confirmed, with $50 costs and disbursements to the relator. All concur.