PEOPLE ex rel. FRUIN BAMBRICK PAV. CO. v. KNIGHT, Comptroller.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. TAXATION — CORPORATION TAX—EXEMPTIONS — MANUFACTURING CORPORATIONS.

    Making a paving compound is the production of a new and distinct substance, which constitutes manufacturing, within the meaning of Laws 1896, p. 857, c. 908, § 183, as amended by Laws 1897, p. 817, c. 785, exempting manufacturing corporations to the extent of the capital actually employed in this state in manufacturing from the franchise tax; but the preparation of a street for the laying of the pavement, and placing the pavement thereon, is not manufacturing within the meaning of such section.

2. SAME—FRANCHISE TAX—PROPORTIONAL ABATEMENT.

    Where a corporation, on October 31, 1898, has been organized but for a portion of the year ending on that date, its franchise tax for that year should be fixed at that proportion of the full year's tax as the time since its organization bears to one year.

Certiorari by the people, on the relation of the Fruin Bambrick Paving Company, against Erastus C. Knight, as Comptroller of the State of New York. Determination of respondent modified.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Edward Wells, Jr., for relator.

John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for respondent.

CHASE, J. The relator is a domestic corporation. It was organized on February 8, 1898, to "make and execute contracts for public and private work of all kinds, including the laying of pavements of asphalt, brick, stone, or any other material; to import, export, manufacture, purchase, sell and deal in asphalt, and asphaltic products, and paving and construction materials and supplies of all kinds; and in general to undertake and carry on all kinds of construction work. * * *" The relator's capital stock of $300,000 was all issued "for contract agreements, retained percentages, and plant." The retained percentages were amounts unpaid on contracts that had been completed by the corporation which transferred such percentages to the relator. Such retained percentages so transferred amounted to $120,000 or $125,000. The business actually conducted by the relator during the years 1898 and 1899 was making and laying asphalt pavements. The re-

lator's plant consists of drying drums, tanks, boiler and engine, drying and mixing machinery, and a derrick for unloading materials, and also of portable rollers, tools, etc., for use on the streets. The comptroller audited and stated the amount of tax to be paid by the relator for the two years ending October 31, 1899, at $900. Thereafter he granted an application for a rehearing, and on such rehearing the tax was reduced to and resettled at $438.75. The comptroller found that for the year 1898 the relator employed $152,500 of capital within this state, and for the year 1899 $140,000. The relator has a contract with the Trinidad Bituminous Asphalt Company for supplying asphalt to it, which contract is very favorable to the relator, and very valuable to it, but the actual value thereof does not appear. It also appears that the relator owns at least $150,000 of said retained percentages, $120,000 to $125,-000 of which is due on contracts performed by the company which transferred said percentages to the relator, and $30,000 of which is due on contracts performed by the relator during the years 1898 and 1899. It does not appear when the company that transferred said percentages to the relator performed their contracts, or when such percentages are payable, or the present cash value of any of such retained percentages. In 1898 the relator also had assets as follows: Cash, $7,846.40; materials, $1,768.55; plant, $12,000; accounts receivable, $3,256.32—total, $24,871.27; and its liabilities were as follows: For rents, $2,525; salaries, $525; materials, $495—total, $3,545. On October 31, 1899, relator also had assets as follows: Cash, $3,548.36; plant, $12,000; materials, $1,362.65; accounts receivable, $2,872.65—total, $19,783.66; and its liabilities were as follows: Bills payable, $11,000; temporary loan, $1,000; materials, $996.34; rents, $1,833.33; salaries, $516.63—total, $15,346.30. The relator insists that it is exempt from the payment of a franchise tax because its capital is wholly actually employed in this state in manufacturing, and in the sale of the product of such manufacturing.

This court has held that making the paving compound is the production of a new and distinct substance, which constitutes manufacturing, within the meaning of section 183 of the tax law, Laws 1896, p. 857, c. 908, as amended by Laws 1897, p. 817, c. 785 (People ex rel. Paving Co. v. Morgan, 61 App. Div. 373, 70 N. Y. Supp. 516); but that the preparation of a street for the laying of the pavement and placing of the paving thereupon is not in any sense a process of manufacture within the meaning of said section. People ex rel. Syracuse Improvement Co. v. Morgan, 59 App. Div. 302, 69 N. Y. Supp. 263. The record does not disclose what portion, if any, of the relator's plant is of a permanent nature, devoted to manufacturing, or what portion, if any, of the cash accounts receivable or retained percentages are the proceeds of the sale of the product of such manufacturing. The relator has wholly failed to furnish us with any facts upon which to compute the amount of capital actually employed in this state in manufacturing and in the sale of the product of such manufacturing, and we cannot say that the comptroller has audited and stated the amount of capital actually employed in this state at too large an amount, even if the amount of capital exempt from the payment of a franchise tax were deducted.

The relator, on October 31, 1898, had been organized but eight

months and twenty-three days.    The tax for the year ending October 31, 1898, should be reduced to $164.83, being such a part of the full year's tax as the time since the relator's organization bears to one year. People ex rel. Mutual Trust Co. v. Miller, 177 N. Y. 51, 69 N. E. 124; People ex rel. Fort George R. Co. v. Miller, 90 App. Div. 588, 86 N. Y. Supp. 420; People ex rel. Rees' Sons v. Miller, 90 App. Div. 591, 86 N. Y. Supp. 193; People ex rel. Cohn & Co. v. Miller, 94 App. Div. 564, 88 N. Y. Supp. 197.

The determination of the comptroller should be modified by reducing the tax to $374.83, and, as so modified, confirmed, without costs to either party.    All concur.