ISLAND PROPERTIES CO., LTD., Plaintiff, Appellee and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Respondent, Appellant and Appellee.

No. 12483. Submitted April 22, 1960.—Decided June 8, 1961.

*J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justices* and *J. C. Santiago Matos, Assistant Attorney General,* for appellant and appellee. *James R. Beverley* and *Carmen B. Hernández* for appellee and appellant.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Tecon Corporation is a corporation organized under the laws of the State of Delaware and on June 22, 1952, was authorized to do business in Puerto Rico. Said corporation was awarded the bid for the construction of landing and taking of strips for airplanes, parking areas, enlargement and improvement of runways and work relating to them, at the Ramey Air Force Base in Aguadilla. It had to accomplish said job within a year and for this purpose, it needed some 200,000 tons of "asphalt mix", which required approximately 2,000,000 gallons of liquid asphalt.

The so-called "asphalt mix" has asphalt which is a product from the refining of raw petroleum, crushed stone to a certain size, and sand. In preparing it, heat is applied to the asphalt until its temperature reaches about 337°F. It is then placed in a mixer where it is mixed with the crushed stone, which also has been previously heated, and with sand. In said mixer the ingredients are mixed well and the product is placed in trucks or in recipients to be poured, rammed and cooled at the place where it is to remain. Said product is hard, compacted and does not have any volatile ingredients contained by the raw petroleum originally used for its elaboration.

The Tecon Corporation decided to carry out separately its activities and organized a corporation under the name of Tecon Quarry Incorporated to take care of the production of the "asphalt mix". This new corporation established a quarry at the Ward Montaña of Aguadilla to crush there the stone to the desired size and a terminal at the Port of Mayagüez to receive the liquid asphalt. From the quarry and the Port of Mayagüez were taken the respective materials to the Ramey Base and there the mixture was made in the aforesaid manner, to obtain the "asphalt mix"; but the directors of the Tecon Corporation in the United States decided that as there existed a corporation that was doing a similar work in the Caribbean, the Island Properties Company, Limited, it would

be in charge of the production and supply of the "asphalt mix" and the Tecon Quarry Incorporated would be dissolved, and as a fact it was dissolved on October 18, 1952.

The Tecon Quarry operated "de facto" since June 17 until its dissolution. During this period it introduced into Puerto Rico machinery on which it paid excises. These payments were made with money advanced by the Island Properties Co., Ltd. As the Tecon Quarry had no money with which to pay the Island Properties Co., Ltd., it transferred to the latter all the equipment, as well as all its rights and stocks. Meanwhile the Island Properties Co., Ltd. introduced into Puerto Rico taxable machinery, equipment and tools. It was this last company which produced all the "asphalt mix" to be used at the Ramey Base and which was sold to the Tecon Corporation for the amount of $1,000,000.

On May 26, 1954, the Island Properties Company, Ltd., requested the Secretary of the Treasury to refund the excises paid for introducing into Puerto Rico the machinery, equipment and tools to be used at the quarry at the Ward Montaña. This claim amounting to $8,238.68, included the excises paid by it and by the Tecon Quarry Corporation. The Secretary of the Treasury granted the refund of part of the excises paid for the sum of $1,860.34 and denied it for the sum of $6,378.34.

The Island Properties Company, Ltd., appealed from this decision to the Superior Court alleging, in synthesis, that all the equipment, apparatuses, machinery, parts and accessories used in relation to the operation of the quarry owned by them, located at the Ward Montaña of Aguadilla, was used in the operation of an industrial plant and therefore was exempt from tax under § 16B of the Internal Revenue Law. It also alleged that the compressors used in said quarry were not operated by electricity or fluid gas, and therefore said compressors were not taxable pursuant to the decision rendered in *Central Coloso* v. *Treas. of Puerto Rico*, 74 P.R.R.

449. It also alleged that it had suffered the burden of the excise payment.

The defendant Secretary accepted some of the facts and denied others. He denied that the plaintiff had sustained the burden of the excise payment, and that the equipment and machinery used at the quarry was tax exempt. He also alleged that the compressors operated by other power than electricity or fluid gas, were taxable under subsection 35 of § 16 of the Internal Revenue Law.

After a trial on the merits, the Superior Court rendered judgment with the following pronouncements:

"The respondent is upheld in his determination of collecting taxes on machinery, apparatuses, material installed and used at the quarry, owned by the plaintiff located at the Ward Montaña, Aguadilla.

"The complaint is granted in regard to the refund of excises which have been collected and which have not yet been returned, on machinery, apparatuses, and material installed and used in the factory stage of production of the asphalt mix, as said process has been previously described in this opinion.

"The complaint is likewise granted in regards to the refund of the excises upon compressors operated by diesel motors.

"The excises paid by, or in the name of the Tecon Quarry, Inc., which by virtue of our decision herein are improperly in the Treasury, because they have been collected with no legal authority therefor, shall be delivered to the juridical entity, the plaintiff, to which all rights and stocks of the Tecon Quarry, Inc. were timely transferred." (Tr. R., p. 26.)

Both parties appealed before us from said judgment. The plaintiff alleges the court erred in holding that the respondent had the right to collect tax on the machinery, apparatuses and material installed and used at the quarry owned by plaintiff located at the Ward Montaña of Aguadilla. Its theory is to the effect that it operated an industrial plant in which the so-called "asphalt mix" was manufactured; that said plant was composed of two units; one, the quarry located at Montaña Ward where the stone was crushed to the

desired size and the other, located at the Ramey Base, where the liquid asphalt, the stone and the sand were mixed at a determined temperature, to produce the "asphalt mix"; that both units constitute a manufacturing industrial plant, the machinery, equipment and accessories used therein being exempt from the payment of the excise pursuant to § 16B of the Internal Revenue Law [13 L.P.R.A. § 1070].

Said section provides insofar as pertinent:

"There shall be exempt from the payment of the excises imposed by this subtitle all apparatus, machinery, or equipment that may be essential for the establishment and operation of industrial plants; ...*Provided, likewise,* That this being an exemption which covers the essential machinery for the establishment of industrial plant, it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with the raw material from the beginning of the manufacturing process until the completion thereof, but also including the machinery, trucks, or hoisting units exclusively and permanently used in the transportation of raw material and semiprocessed articles on the premises of the industrial plant, as well as the equipment used in the packing and labeling of the product and in the preservation of the latter or of the raw material in the case of perishable articles; but it shall not cover the machinery, apparatuses, equipment, or vehicles used in the administrative distributional or commercial stage of the industry;...."

Even accepting, without deciding, that the activities effected by the plaintiff at the Ramey Base, consisting in the mixing of the ingredients which compose the so-called "asphalt mix" constitutes a manufacturing process,[1] the machinery used by it at the quarry is not exempted from taxation. We cannot accept as good its argument that the extraction and crushing of stone at the Ward Montaña of Aguadilla, its transportation to the Ramey Base, the storing

---

[1] See, however, *People ex rel. Syracuse Improv. Co.* v. *Morgan,* 69 N. Y. Supp. 263 and *People ex rel. Fruin Bambrick Co.* v. *Knight,* 90 N. Y. Supp. 537.

and transportation of the liquid asphalt to said base, as well as the mixture of these ingredients by means of the appropriated machinery constitute a single industrial activity whose exemption is covered by § 16(B) of the Internal Revenue Law. Said exemption covers the essential machinery for the establishment of industrial plants and it is limited to the machinery of the factory stage of production in the industrial process which intervenes with the raw materials since the beginning of the *manufacturing process* until its completion.[2] If the plaintiff was doing any *manufacturing process*, it consisted of mixing the ingredients of the "asphalt mix" in a mixer or blender at the Ramey Base. The extraction and crushing of stone is not a manufacturing process under our Internal Revenue Law. *Descartes, Treas.* v. *Tax Court; P. R. Aggregates, Int.*, 78 P.R.R. 82. The crushed stone as well as the liquid asphalt and the stone is the raw material that the plaintiff used in the preparation of the "asphalt mix". If the mixture of these three ingredients is considered as a manufacturing process, the machinery used in said process would be covered by the tax exemption because said machinery would be the only one of the factory stage of production in the industrial process (mixing of ingredients) that has to do with the raw materials since the beginning of the manufacturing process until its completion. The record shows, however, that the machinery, equipment and apparatus used by the plaintiff at Ramey Base did not pay tax. On the other hand the machinery and equipment used at the quarry play no part in the mixing of the three ingredients which results in the production of the "asphalt mix." This was the product that the plaintiff sold to the Tecon Corporation. The stone extracted at the quarry was

---

[2] When the act did not state this limitation we decided in *Caparra Dairy* v. *Tax Court*, 67 P.R.R. 292, that the machinery, equipment and apparatus essential for the establishment or operation of industrial plants were covered by the exemption, although they were not industrial plants devoted to manufacture a determined product.

raw material and the machinery and equipment used in the extraction and crushing of the stone did not intervene in the conversion of said raw material into the product sold to the Tecon. As we said in *Francis* v. *Tax Court*, 74 P.R.R. 18, the legislative purpose was to limit the exemption only to the machinery of the factory stage of production in the industrial process in itself, which necessarily had to intervene in the conversion of the raw materials since the beginning of the elaboration or manufacturing process until its completion. No other machinery used in the conversion of the raw materials is covered by the exemption. Assuming then, that the plaintiff manufactured a product, it did so at the unit located at the Ramey Base which was the industrial plant. It was the intent of the Legislative Assembly to limit the exemption to the unit which constituted the industrial plant. *Central Coloso* v. *Tax Court*, 70 P.R.R. 62.

The trial court, therefore, did not err in deciding that the machinery, equipment, etc., used by the plaintiff at the quarry located at the Ward Montaña of Aguadilla was not covered by the exemption established in § 16(B) already cited.

Let us proceed to consider respondent's appeal.

 He alleges that the trial court erred in not deciding that the plaintiff had no status and/or cause of action to request the refund. He bases his contention on the fact that (1) most of the machinery and equipment was introduced into Puerto Rico by the Tecon Quarry Inc., said corporation having been the one who paid the excises and suffered the burden of said payments, and the only taxpayer with a right to request the refund of the excises paid, and (2) that the assignment of credit made by said corporation to the plaintiff is null and void at law.

The parties stipulated that of the total sum of excises involved, amounting to $8,238.68, the amount of $3,329.99 is excises which fall upon the machinery or equipment

declared by the plaintiff, Island Properties Corporation, and that of this latter sum, the Secretary of the Treasury had recommended the reimbursement of $328.33. The remaining amount corresponds to excises levied on the machinery and equipment declared by the Tecon Quarry, Inc. But as the plaintiff requests the refund of the total sum of excises, we must determine whether the assignment of the credit by the Tecon Quarry Inc., to the plaintiff is valid in view of the fact that the trial court ordered the reimbursement to said plaintiff of the excises unduly collected from the Tecon Quarry, Inc.

The respondent is right in this contention. The plaintiff is not the taxpayer nor did it suffer the burden of the payment of the excises levied on the machinery and equipment introduced into Puerto Rico by the Tecon Quarry, Inc. Although the plaintiff advanced money to the Tecon Quarry for the payment of said excises, that fact did not convert it into the taxpayer when the taxable event occurred. Between both entities there was created a relation of creditor and debtor. This is so much so that the assignment made by the Tecon Quarry to the plaintiff had for its consideration the amounts which the latter had advanced to the former. This assignment did not make the plaintiff the taxpayer. Act No. 232 of May 10, 1949 [13 L.P.R.A. § 261] grants the taxpayer the right to apply for reimbursement of taxes unlawfully or unduly paid or collected or in excess of the amount due, *from the taxpayer* and authorizes him to appeal before the Superior Court from any denial to refund by the Secretary of the Treasury. Only the person who has suffered the burden of the tax payment in question may appeal before said court, and an allegation to that effect and proof thereof at the proper time will be considered requirements without which the Superior Court will have no authority to decide the matter. The complaint in this case has the pertinent and necessary allegations to that effect but

the evidence, as we have seen, does not support the allegations.

A matter similar to this one has already been decided in other occasions in favor of the Secretary of the Treasury. *Pedro A. Pizá, Inc.* v. *Tax Court*, 72 P.R.R. 302; *Standard Commercial Tobacco Co.* v. *Tax Court*, 71 P.R.R. 701.

 The trial court decided correctly that the air compressors not operated by electricity or fluid gas are not taxable under the Internal Revenue Law. *San Miguel & Co.*, v. *Secretary of the Treasury*, *ante*, p. 657, decided on May 18, 1961. Now, the record does not show with sufficient clearness the number of compressors introduced by the plaintiff, nor the amount of excises paid by it for said introduction. Apparently it paid some excises on that account and suffered the burden of such payment. This being so, the plaintiff is entitled to the refund of the excises paid by it for the introduction of air compressors operated by power other than electricity or fluid gas. It is not entitled, however, as we have said, to the refund of the excises paid for the introduction of the compressors declared by the Tecon Quarry, Inc., although the plaintiff had advanced the money to the latter corporation to pay said excises.

The judgment rendered by the Superior Court will be modified in the sense of ordering the Secretary of the Treasury to reimburse to the plaintiff only the excises paid by it on the air compressors operated by power other than electricity or fluid gas, introduced and declared by said plaintiff, and as modified, it will be affirmed.