591 S.E.2d 242 (2003)
214 W.Va. 684
BLUESTONE PAVING, INC., A Corporation, Petitioner Below, Appellee,
v.
TAX COMMISSIONER OF the STATE OF WEST VIRGINIA, Respondent Below, Appellant.
No. 31377.
Supreme Court of Appeals of West Virginia.
Submitted November 5, 2003.
Decided December 3, 2003.
Dissenting Opinion of Justice Albright December 4, 2003.
Concurring Opinion of Justice Maynard December 9, 2003.
*244 Darrell V. McGraw, Jr., Esq., Attorney General, Stephen Stockton, Esq., Senior Assistant Attorney General, Charleston, for the Appellant.
Shawn R. Romano, Esq., Daniels Law Firm, P.L.L.C., Charleston, for the Appellee.
*243 DAVIS, Justice.
The appellant herein and respondent below, the Tax Commissioner of the State of West Virginia [hereinafter referred to as "Tax Commissioner"], appeals from an order entered July 24, 2002, by the Circuit Court of Mercer County. In that order, the circuit court determined that the appellee herein and petitioner below, Bluestone Paving, Inc. [hereinafter referred to as "Bluestone"], was entitled to receive a use tax refund pursuant to W. Va.Code § 11-15A-10a(a)[1] (1986) (Repl.Vol.2002).[2] On appeal to this Court, the Tax Commissioner states that the circuit court erroneously applied the governing statute to the facts at issue in this case. Upon a review of the parties' arguments, the pertinent authorities, and the record submitted for appellate consideration, we reverse the decision of the Mercer County Circuit Court.

I.

FACTUAL AND PROCEDURAL HISTORY
Bluestone Paving, Inc., is a West Virginia corporation and paving contractor located in Princeton[3] whose primary function is to manufacture asphalt and to use this asphalt to pave roads for the West Virginia Department of Transportation, Division of Highways [hereinafter referred to as "DOH"]. In order to manufacture the asphalt needed for its paving operations, Bluestone was required to purchase gravel from a quarry in Virginia because, pursuant to DOH guidelines, there was not a sufficient amount of gravel available in West Virginia to guarantee the level of quality dictated by the DOH. Upon purchasing gravel at the quarry located in Pounding Mills, Virginia, Bluestone was required to pay a Virginia sales tax equivalent to 4 1/2% of the gravel's purchase price.[4] The total amount of sales tax Bluestone paid to Virginia on the purchase of gravel at issue herein is $52,288.28.[5]
Following the purchase of the gravel, Bluestone transported it back to Princeton where it was used to manufacture asphalt. This asphalt was then used to pave roads pursuant to Bluestone's paving contracts with the DOH. Upon the use of the asphalt, Bluestone was required to pay a use tax to the State of West Virginia in the amount of 6% of the total value of the asphalt.[6] The total amount *245 of use tax Bluestone paid to West Virginia on the asphalt at issue herein is $69,777.99.
In 2001, Bluestone filed a claim for a tax refund, pursuant to W. Va.Code § 11-15A-10a(a), seeking to recoup the amount of the sales tax it had paid to Virginia when it purchased gravel from the Pounding Mills quarry. The Tax Commissioner denied Bluestone's claim, whereupon Bluestone filed a petition for said refund. By decision rendered January 17, 2002, the administrative law judge [hereinafter referred to as "ALJ"] determined that Bluestone was not entitled to its requested refund. In reaching this decision, the ALJ concluded that W. Va.Code § 11-15A-10a(a)[7]
allows for a credit against the use tax of a particular item if sales tax on that same property has been paid to another state. In other words, in order to get credit for the sales tax paid to Virginia, the West Virginia use tax must be the Virginia sales tax's "mirror image." The Petitioner in this case [Bluestone] may not claim this credit and subsequent refund because the West Virginia purchasers' use tax on asphalt is not the mirror image of the Virginia sales tax on aggregate [gravel]. By the Petitioner's own admission, the Petitioner takes aggregate and uses it to manufacture asphalt. The manufacturing of asphalt at its Princeton manufacturing facility changes the character of the product, the aggregate, for which sales tax has been paid to Virginia. The asphalt on which the Petitioner has paid the six percent (6%) purchasers' use tax to West Virginia is a separate product, which is made from the aggregate for which sales tax was paid. These are two separate taxable transactions that at first appear similar only because one product is used to manufacture another. However, it is this manufacturing (manipulating the product in an activity beyond common use) of a new and more valuable product that creates a separate taxable transaction and prevents W. Va.Code § 11-15A-10a from applying to this situation.
(Emphasis in original).
Bluestone then appealed this ruling to the Circuit Court of Mercer County. By order entered July 24, 2002, the circuit court reversed the ALJ's decision and found Bluestone to be entitled to the requested refund. In rendering its ruling, the circuit court determined that
the intent of West Virginia Code § 11-15A-10a is to prevent the imposition of double taxation of tangible personal property brought into the State of West Virginia, through the imposition of West Virginia's Use Tax, when tax has been levied by another state.
....
The Administrative Law Judge erred in determining that in order to obtain a credit "the West Virginia Use Tax must be the Virginia Sales Tax's `mirror image.'"
This Court finds that West Virginia Code § 11-15A-10a makes no such requirement. West Virginia Code § 11-15A-10a only requires that the tangible personal property upon which Use Tax is imposed be the tangible personal property upon which sales tax had been paid.
The Court finds that it is the aggregates [gravel] upon which sales taxes were paid in Virginia, incorporated into asphalt and used by the same taxpayer in a contracting activity upon which Use Taxes were levied by the State of West Virginia....
From this adverse ruling, the Tax Commissioner now appeals to this Court.

II.

STANDARD OF REVIEW
On appeal to this Court, the Tax Commissioner questions the circuit court's interpretation of W. Va.Code § 11-15A-10a(a) and its application thereof to the facts of this case. We previously have held that
[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a *246 clearly erroneous standard. Questions of law are subject to a de novo review.
Syl. pt. 2, Walker v. West Virginia Ethics Comm'n, 201 W.Va. 108, 492 S.E.2d 167 (1997). Of specific relevance to the instant proceeding is the method by which we review a circuit court's interpretation of a statutory provision. In this regard, we have held "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. pt. 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995). See also Syl. pt. 1, Appalachian Power Co. v. State Tax Dep't of West Virginia, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to de novo review."). With these standards in mind, we proceed to consider the parties' arguments.

III.

DISCUSSION
The sole issue presented for resolution in the instant appeal is whether Bluestone's payment of a 6% use tax in West Virginia for asphalt used to pave roads in West Virginia entitles it to a refund of the 4 1/2% sales tax it paid to Virginia for the gravel it used to make the asphalt. Integral to a resolution of this matter is W. Va.Code § 11-15A-10a(a) (1986) (Repl.Vol.2002),[8] which provides that
[a] person is entitled to a credit against the tax imposed by this article on the use of a particular item of tangible personal property equal to the amount, if any, of sales tax lawfully paid to another state for the acquisition of that property: Provided, That the amount of credit allowed shall not exceed the amount of use tax imposed on the use of the property in this state.
Applying this statutory language to the instant controversy, the circuit court reversed the decision of the administrative law judge and found that Bluestone was, in fact, entitled to the aforementioned credit and resultant refund.
On appeal to this Court, the Tax Commissioner disputes the circuit court's ruling and argues that the facts of this case do not entitle Bluestone to a tax credit as contemplated by W. Va.Code § 11-15A-10a(a). In this regard, the Commissioner contends that gravel and asphalt are not the same thing because gravel is an aggregate used to make asphalt and is an entirely different substance from asphalt, i.e., the resultant final product, with entirely different uses and purposes. Citing Central Paving Co., Inc. v. Idaho Tax Comm'n, 126 Idaho 174, 879 P.2d 1107 (1994); Buckley v. Northeastern Paving Corp., 161 Me. 330, 211 A.2d 889 (1965); Bituminous Roadways, Inc. v. Commissioner of Revenue, 324 N.W.2d 799 (Minn.1982); Blevins Asphalt Constr. Co. v. Director of Revenue, 938 S.W.2d 899 (Mo.1997) (en banc); People ex rel. Eastern Bermudez Asphalt Paving Co. v. Morgan, 61 A.D. 373, 70 N.Y.S. 516 (1901); Fritchie Asphalt & Paving Co. v. Bowers, 173 Ohio St. 111, 18 Ohio Op.2d 359, 180 N.E.2d 154 (1962) (per curiam); Union Paving Co. v. Commonwealth, 148 Pa.Commw. 358, 611 A.2d 360 (1992). Thus, the Commissioner states that the taxes Bluestone paid were for two different items and constituted two separate transactions: the first transaction was Bluestone's purchase of gravel, which was subject to sales tax in Virginia, and the second transaction was Bluestone's use of asphalt, which was subject to use tax in West Virginia. Because two separate items were involved in the two separate transactions, Bluestone is not entitled to the refund it seeks.
By contrast, Bluestone asserts that the circuit court correctly found it to be entitled to a refund in accordance with W. Va.Code § 11-15A-10a(a). In support of its argument, Bluestone contends that it has satisfied the statutory criteria enumerated in W. Va. Code § 11-15A-10a(a), and, therefore, it is entitled to the refund which it seeks. Bluestone also rejects the Tax Commissioner's characterization of gravel and asphalt as two distinct items involved in two separate transactions arguing that the asphalt it used to pave roads in West Virginia was "hot mix asphalt," the definition of which specifically *247 recognizes that it is a mix of various aggregates, such as gravel.
At issue in this case is the manner in which W. Va.Code § 11-15A-10a(a) should be interpreted and applied to the facts presently before us. When deciding a case of statutory interpretation, it is first necessary to examine the language employed by the Legislature. "We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." Appalachian Power Co. v. State Tax Dep't, 195 W.Va. at 587, 466 S.E.2d at 438. Thus, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, State v. Elder, 152 W.Va. 571, 165 S.E.2d 108 (1968). Accord Syl. pt. 1, State v. Jarvis, 199 W.Va. 635, 487 S.E.2d 293 (1997) ("`A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, State v. Epperly, 135 W.Va. 877, 65 S.E.2d 488 (1951)."). See also Sizemore v. State Farm Gen. Ins. Co., 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) ("`A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.'" (quoting Hereford v. Meek, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949))).
On occasion, however, such as the case sub judice, the language used by the Legislature may be plain but it may have neglected to define a certain word or words used therein. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, Miners in Gen. Group v. Hix, 123 W.Va. 637, 17 S.E.2d 810 (1941), overruled on other grounds by Lee-Norse Co. v. Rutledge, 170 W.Va. 162, 291 S.E.2d 477 (1982). Accord Syl. pt. 6, in part, State ex rel. Cohen v. Manchin, 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning."); Syl. pt. 4, State v. General Daniel Morgan Post No. 548, V.F.W., 144 W.Va. 137, 107 S.E.2d 353 (1959) ("Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use.").
However, when assigning a meaning to an undefined term, we will not embrace a definition that would produce absurd, inconsistent, or incongruous results. "It is the `duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.'" Expedited Transp. Sys., Inc. v. Vieweg, 207 W.Va. 90, 98, 529 S.E.2d 110, 118 (2000) (quoting State v. Kerns, 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990)) (emphasis omitted). Thus, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. pt. 2, Newhart v. Pennybacker, 120 W.Va. 774, 200 S.E. 350 (1938). Accord Syl. pt. 2, Conseco Fin. Serv'g Corp. v. Myers, 211 W.Va. 631, 567 S.E.2d 641 (2002) ("`It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, Click v. Click, 98 W.Va. 419, 127 S.E. 194 (1925).").
Upon a review of W. Va.Code § 11-15A-10a(a), it appears that the crux of the parties' dispute herein is the meaning of the word "that" as it appears in this statute. In pertinent part, § 11-15A-10a(a) provides "[a] person is entitled to a credit against the tax imposed by this article on the use of a particular item of tangible personal property equal to the amount, if any, of sales tax lawfully paid to another state for the acquisition of that property [.]" (Emphasis added). The Tax Commissioner construes this portion as *248 meaning that the use tax credit is allowed if the use tax is levied on exactly the same property upon which the taxpayer has previously paid sales tax to another state. On the other hand, Bluestone understands the phrase as permitting the credit if the previously taxed property can be identified as comprising a part or component of another type of property.
Based upon our determination of the commonly accepted meaning of the word "that," we agree with the Tax Commissioner's construction of this term. In its most simplistic and basic form, "that" is defined as "`[t]he same.'" XI The Oxford English Dictionary 252 (1970). "That" also has been more broadly construed "to indicate a person, place, thing, or degree as indicated, mentioned before, present, or as well-known or characteristic." Random House Webster's Unabridged Dictionary 1965 (2d ed.1998). Accord XI The Oxford English Dictionary 252 (defining adjective "that" as meaning "a thing ... either as being actually pointed out or present, or as having just been mentioned and being thus mentally pointed out"); Webster's Ninth New Collegiate Dictionary 1221 (1983) (recognizing adjective form of "that" signifies "being the person, thing, or idea specified, mentioned, or understood"). Thus, it is clear that the word "that," as employed by W. Va.Code § 11-15A-10a(a) to modify the property upon which the taxpayer paid a sales tax to another state, refers to the exact same, or identical, item of personal property upon which the taxpayer would otherwise be required to pay a use tax to West Virginia. Cf. City of Dallas v. Cornerstone Bank, N.A., 879 S.W.2d 264, 271 (Tex.Ct.App.1994) (interpreting "that property" in Tex. Tax Code Ann. § 32.01 (Vernon Supp.1994) as collectively referencing "the category of property taxed rather than each individual item of property" for tax lien purposes). To construe this term otherwise would result in an inconsistent meaning in contravention of our prior holding in Syllabus point 2 of Newhart v. Pennybacker, 120 W.Va. 774, 200 S.E. 350, and its progeny which specifically counsel against such a result.
Accordingly, we hold that, pursuant to the plain language of W. Va.Code § 11-15A-10a(a) (1986) (Repl.Vol.2002), "[a] person is entitled to a credit against the tax imposed ... on the use of a particular item of tangible personal property equal to the amount, if any, of sales tax lawfully paid to another state for the acquisition of that property," where the sales tax paid and the use tax credit sought both pertain to the same, identical item of tangible personal property. Applying this decision to the facts of the instant proceeding, we conclude that Bluestone was not entitled to the use tax credit provided by W. Va.Code § 11-15A-10a(a) because the item of property upon which it paid sales tax to the Commonwealth of Virginia, i.e., gravel, was not precisely the same item of property upon which it was required to pay use tax to this State, i.e., asphalt. Therefore, we reverse the contrary decision of the Circuit Court of Mercer County.

IV.

CONCLUSION
For the foregoing reasons, we reverse the July 24, 2002, order of the Mercer County Circuit Court.
Reversed.
Justice MAYNARD concurs and reserves the right to file a concurring opinion.
Justices McGRAW and ALBRIGHT dissent and reserve the right to file dissenting opinions.
ALBRIGHT, Justice, dissenting.

(Filed Dec. 4, 2003)
I dissent from the majority opinion because it fails to fully explore the ramifications of the conclusion that it adopts. In essence, the majority concludes (1) that a taxpayer who has paid the State of Virginia a sales tax (2) may claim a credit for that tax under the use tax provisions found in Article 15A of Chapter 11 of the West Virginia Code (3) against a sales tax imposed under Article 15, Chapter 11 of the West Virginia Code, (4) but only if the item upon which the sales tax was paid to Virginia remains identical in every respect throughout its existence in *249 West Virginia. In reaching this conclusion, the majority adopts the position urged upon it by the State Tax Commissioner.
I believe that under the facts presented, this Court had two reasonable choices, but rejected those far preferable options for a completely illogical third option. The first choice was to reject the availability of a credit granted under Article 15A against a tax imposed by Article 15. The second choice was to recognize the availability of the credit and reject the limitation proposed by the State Tax Commissioner. The third alternative, which the Court adopts at the behest of the State Tax Commissioner, is to craft a limitation on the credit which is supported neither by statute nor by reason. To fully analyze this complex situation, it is helpful to first review the structure and intent of the two statutes, that is, Article 15, Chapter 11, the sales tax, and Article 15A, Chapter 11, the use tax, together with their interrelation.
West Virginia enacted a sales tax for the support of its schools in 1937. As originally enacted, the tax was imposed on the sale of goods and services. Its burden rested on the purchaser, the vendee, although from the beginning the responsibility for its collection was with the vendor at the point of sale.
In the case of a sale contracted in state for ultimate delivery to a consumer out of state, the tax did not apply. Therefore, for a purchase initially contracted in West Virginia but delivered to an ultimate consumer out of state, such as Virginia, no sales tax was imposed. Conversely, in the case of a purchase out of state for ultimate delivery to a consumer in West Virginia, neither the state of domicile of the vendor (Virginia) nor the state of domicile of the vendee (West Virginia) collected sales tax. Alternatively, when, as in this case, a resident of one state purchased and took delivery of an item in another state that state customarily required the vendor to collect its sales tax from the purchaser (vendee) at the time of sale, even though the purchaser immediately brought the item which it bought into the purchaser's state of domicile.
To address these situations, most states, including West Virginia, adopted a use tax, undertaking to tax the use of property in this state of items purchased out of state as contrasted with attempting to tax the sale of such items. Under its use tax, West Virginia levied a tax on the use of property in this state, equal to the West Virginia sales tax, on items purchased elsewhere on which West Virginia was unable to collect a sales tax. To reduce the chances for double taxationtaxation by West Virginia and by the state where the sale was completedWest Virginia law currently provides for a credit:
against the [use] tax on the use of a particular item of tangible personal property equal to the amount, if any, of sales tax lawfully paid to another state for the acquisition of that property... not [to] exceed the amount of the use tax imposed [by] this state.
West Virginia Code § 11-15A-10a (1986) (Repl.Vol.2002).
This credit operates to effectively remove from the scope of the use tax a substantial number and dollar amount of purchases made daily by consumers throughout the state. Technically those consumers are liable for the filing of a use tax return on such purchases and are then entitled to claim the credit provided by this section against any tax due the state pursuant to the return. In daily practice, relatively few use tax returns are filed, except for businesses routinely filing other types of tax returns. In practical terms, the credit provided under this section absolves most consumers of most or all liability for use tax on those out-of-state purchases.[1]
*250 In the case before us, the Appellee filed some form of a West Virginia tax return and claimed a credit under West Virginia Code § 11-15A-10a for the amount of sales tax it previously paid the State of Virginia for gravel purchased there and imported into West Virginia for use in the manufacture of asphalt to be used in fulfilling a contract with the state to pave certain roadways. According to the Appellant State Tax Commissionerand the majority opinionthe Appellee is not entitled to the benefit of the credit because by using the gravel to make asphalt the gravel was no longer the "identical" item of property it was at the time of purchase and importation into West Virginia. The Tax Commissioner argued that the credit would only apply if the gravel had retained its character solely as gravel; the majority of this Court has now agreed and ensconced that limitation upon the use tax credit granted by West Virginia Code § 11-15A-10a (1986) in syllabus point five of the majority opinion.
Analysis of the limitation advocated by the Tax Commissioner requires a recital of a further development in the law of sales and use taxes that is pertinent because the taxpayer in this case is seeking to apply the use tax credit established by West Virginia Code § 11-15A-10a to reduce liability for sales taxes imposed by West Virginia Code § 11-15-7 on the sale or value of a manufactured product.
In 1989, the Legislature added to the sales taxnot the use taxa series of amendments laying the sales tax obligation upon the vendor-not the vendee-for certain goods and services utilized in certain specific activities. Among those changes was an amendment to West Virginia Code § 11-15-7 (1989), which imposed on the vendors of certain manufactured products (not otherwise exempted from the tax) a sales tax on the proceeds of the sale of such manufactured products, or if not so sold, upon "the gross value of the natural resource, product or manufactured product, so used or consumed by him," and further requiring that the manufacturer "pay the tax imposed by this article," again, the sales tax, not the use tax. Here, contrary to the historic structure of sales and use taxes, the tax was levied on the seller or manufacturer, not the purchaser, the vendee. As noted, it was against this sales tax, imposed by West Virginia Code § 11-15-7, that the Tax Commissioner argues, and the majority of this Court holds, that the Appellee may claim the credit allowed under the use tax by West Virginia Code § 11-15A-10a, but only if the particular item of personal property remains "identical" throughout its existence in West Virginia.
The majority argues that it is merely applying the plain meaning of the exemption. That is transparently wrong. Under the plain meaning of West Virginia Code § 11-15A-10a, the credit there allowed applies only to "a credit against the tax imposed by this article," the article imposing the use tax. The credit the majority approves (had gravel remained gravel) is against the sales tax. Thus, it is clear that the majority is not simply applying the plain meaning of the statute. The majority is interpreting the statute, albeit in the limited manner suggested by the Tax Commissioner. That interpretation extends the application of the use tax credit so that it may also operate as a credit against the sales tax imposed on vendors of manufactured goods.
I have no real quarrel with this extension of the credit to the sales tax in this situation. However, it must be admitted that the Court had a valid reason not to extend that credit had it so chosen. As I said at the beginning of this dissent, the Court had a clear and defensible option: To reject the application of the use tax credit to reduce any sales tax liability.
On the other hand, there is also sound reason in law to permit the application of the use tax credit to sales tax liability in the situation before us. The use tax statute contains a particular statement of legislative intent that arguably justifies the extension of the use tax credit to sales tax liability in these circumstances:
The legislature hereby finds and declares that it is the intent of the legislature that the use tax imposed by the provisions of article fifteen-A [§§ 11-15A-1 et seq.] and the consumers sales tax imposed by *251 the provisions of article fifteen [§§ 11-15-1 et seq.], chapter eleven of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, be complementary laws and wherever possible be construed and applied to accomplish such intent as to the imposition, administration and collection of such taxes.
W.Va.Code § 11-15A-1a (1969) (Repl.Vol.2002) (emphasis supplied).
In light of that very clear legislative directive, it is not only appropriate but highly desirable that the Tax Commissioner and the courts look with favor on constructions and applications of the two statutes, the sales tax and the use tax, that treat these taxes in a correlative fashion so as to achieve that legislative intent of complementary imposition, administration and collection.
Given that expression of legislative intent, it is similarly apparent that this Court had a second reasonable choice: To adopt the position enunciated by the circuit court and grant the Appellee the benefit of the use tax credit against its sales tax liability.
Why then did the majority make a third choice and deny the Appellee the benefit of the credit while approving its application to a sales tax liability consistent with the Tax Commissioner's preferred limitation? In short, because the majority misconstrued and misapplied the statutory grant of the credit for "the use of a particular item of tangible personal property." The majority wrote into the statute a further limitation that the property must remain identical in the manufacturing process to entitle payment of the foreign sales tax on the property to be used as a credit against the sales tax imposed on manufacturing by West Virginia Code § 11-15-7. The question that remains is whether that judicially crafted limitation, urged on the majority by the Tax Commissioner, is fair to the taxpayers and justified by law. The answer to that query is an emphatic and undeniable "no!"
First, it defies reason to say that any product, after manufacture, is the identical tangible property it was before manufacture. It is the essence of the process of manufacturing to take a collection of ingredients and by a combination of those ingredients and perhaps the introduction of chemical or other processes create something intrinsically different. Literally applied, the limitation adopted by the majority defeats the credit against any manufactured product.
Second, in that manufacturing process, it would be ludicrous to require a search of each final product for portions that remain "identical" and thus qualify for the credit, e.g., driven nails that nonetheless remain identical, and a search for other final parts or portions whose identical nature have been altered by the manufacturing process.
Third, the statutory language imposing a sales tax on manufactured products and the statutory language granting the credit under discussion expressly recite that certain materials incorporated into the manufactured product will be used or consumed in the manufacturing process. In this connection, the majority mistakenly construes the "used and consumed" language in West Virginia Code § 11-15-7 to mean that the tax at issue is a use tax, not a sales tax. That mistaken understanding exposes a fundamental lack of appreciation of the nature of the issues at stake and leads to the majority's erroneous requirement that the property remain "identical."
Fourth, there is no basis on the face of the exemption statute, under its plain meaning, to limit the exemption in the manner adopted by the majority.
Fifth, the statutory requirement granting the credit only to "the use of a particular item of tangible personal property," far from intimating a requirement that the property remain "identical" throughout a manufacturing process, simply limits the application of the credit to the sales tax due on the manufactured product into which the "particular item of tangible personal property" was incorporated. In my view, the requirement simply prevents a taxpayer from claiming the credit against sales or products used that do not include the "particular item of tangible personal property."
Sixth, a fundamental goal of manufacturing a product is to add value to the materials *252 used by combining and/or processing them, thereby creating a new "item." Allowing a credit for the Virginia tax paid on the gravel against the sales tax imposed on the selling price or value of the asphalt manufactured by the Appellee likely leaves that state with a substantial tax collection.
All of this leads to the conclusion that the circuit court judge who first heard this administrative appeal, Judge Frazier, had it right and the majority has missed the boat. Appellee paid Virginia a sales tax for gravel that Appellee then transported to West Virginia and used and consumed here to manufacture asphalt. In the process of manufacturing that asphalt, it used or consumed the particular item of personal property, the gravel, upon which Appellee paid a sales tax to Virginia. Construing the use tax and sales tax statutes in a complementary way to achieve their intent, the use tax credit should have been applied against the sales tax imposed on the Appellee for the manufacture of the asphalt.
Under the majority's third choice, limiting the credit to "identical" items after a manufacturing process, some manufacturing processes will be subjected to double taxationfor both foreign sales taxes and West Virginia sales taxes. Others will have the benefit of the credit. Complementary construction of the sales and use tax statutes will be hit and miss and the credit difficult to obtain and administer. The unanswered question is why the majority chose to deny this West Virginia firm, situate as it is on the border of the state near stiff competition, the credit it seeks. The result is to further burden Appellee's West Virginia manufacturing processes and all West Virginia manufacturers with unintended double taxation.
It is said in royal lore that courts should "protect the King's purse." It is also said that "the King's prerogative is to sheer his sheep, not skin them." In this case the majority has allowed the King to "skin the taxpayer." The judgment of the Circuit Court of Mercer County should have been affirmed.
I am authorized to state that Justice McGRAW joins in this dissent.
MAYNARD, Justice, concurring.

(Filed Dec. 9, 2003)
I fully concur with the majority's opinion in this case. I write separately to clarify misconceptions about the majority's decision raised by my dissenting brethren.
At the heart of the dissenters' separate opinion is the belief that the tax credit at issue herein, W.Va.Code § 11-15A-10a(a), has been construed by the majority to provide a credit against the sales tax imposed by W.Va.Code § 11-15-7. Nothing could be further from the truth. W.Va.Code § 11-15A-10a(a) clearly states that the credit is allowed "against the tax imposed by this article on the use of a particular item of tangible personal property [.]" (Emphasis added). In this context, "this article" refers to Article 15A, which defines, levies, and limits the Use Tax, not the Sales Tax. Assuming arguendo that the sales tax referenced by the dissenters applied to the transactions underlying the instant appeal, it simply is not within the purview of the statute to extend the credit to taxes levied under different articles of the tax code. Thus, the only taxes against which W.Va. Code § 11-15A-10a(a) provides a credit are use taxes imposed by Article 15A.
Moreover, I believe my dissenting colleagues also misinterpret the tax statutes applicable to Bluestone's acquisition of gravel for use in West Virginia manufacturing processes. Throughout their separate opinion, the dissenters strongly lament how the majority's decision will effectively stifle West Virginia manufacturers by imposing double taxation upon them through the disallowance of the credit provided by W.Va.Code § 11-15A-10a(a). Were the tax structure as simplistic as they claim it to be, I would wholeheartedly agree with their analysis and share their concerns. However, the tax consequences they foretell are not illustrative of either the facts of the case sub judice or the law applicable to the factual scenario upon which they base their dissent.
*253 The factual context of this appeal is much more straightforward than is apparent from the dissenters' reiteration thereof. Simply stated, Bluestone, a West Virginia corporation, traveled to Virginia where it purchased gravel and paid a 4 1/2% sales tax to Virginia.[1] No West Virginia sales taxes on the gravel were implicated by this transaction nor were they later imposed on Bluestone's use of the gravel to manufacture the asphalt it now claims is identical to the gravel it initially purchased. The parties do not argue that West Virginia sales taxes are part of the equation the Court was requested to consider in its decision of this case, and Bluestone does not seek a refund of, exemption from, or credit against West Virginia sales taxes in this case. In short, West Virginia sales taxes are simply not at issue in this case's factual or procedural posture. I venture to say that if West Virginia sales taxes were, in fact, implicated by the facts presently before this Court, W.Va.Code § 11-15A-10a(a), the statute considered and construed by the majority, which pertains to use taxes rather than sales taxes, would not be applicable as its criteria could not have been satisfied.
Furthermore, I think the dissenters miscomprehend the nature and effect of the tax statutes that would have applied had, hypothetically speaking, Bluestone actually purchased its gravel in West Virginia.[2] It is correctly noted that Bluestone's purchase of gravel in West Virginia would have been subject to sales tax pursuant to W.Va.Code § 11-15-7. What the dissenters fail to mention, however, is that such a purchase also has a corresponding exemption to which Bluestone would have been entitled. See W.Va.Code § 11-15-9(b)(2) (recognizing refundable exemption for "[s]ales of ... supplies and materials directly used or consumed in the activit[y] of manufacturing"). Additionally, the dissenters indicate that Bluestone's use of the gravel in its manufacture of asphalt would also have been subject to a use tax under Article 15A of the tax code. Again, however, they conveniently neglect to mention that another corollary exemption is available to which Bluestone would have been entitled. See W.Va.Code § 11-15A-3(a)(4) (exempting from use taxes imposed by Article 15A "[t]angible personal property ..., the sale of which in this state is not subject to the West Virginia consumers sale tax"). Thus, it is apparent that, even if Bluestone had purchased its gravel in West Virginia, where it would have been subject to sales tax, it would have been entitled to two different refundable exemption provisions in which case it would not have had to request a refund under W.Va.Code § 11-15A-10a(a). I cannot emphasize enough, though, that Bluestone did not pay West Virginia sales tax and was not required, by the facts of this case, to do so. Further, if Bluestone had paid West Virginia sales tax, its remedy would have been to request an exemption from such tax and not a credit pursuant to W.Va.Code § 11-15A-10a(a), which section does not apply to cases involving the payment of West Virginia sales tax.
"Taxes are what we pay for civilized society[.]" Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100, 48 S.Ct. 100, 105, 72 L.Ed. 177, 183 (1927) (Holmes, J., dissenting). Nothing can be more civilized than carrying out the true meaning and import of the words used by the Legislature in its adoption of a statutory enactment.
For the foregoing reasons, I respectfully concur with the opinion of the Court.
NOTES
[1] For the pertinent statutory language, see infra Section III.
[2] Since the time of the events at issue in the instant appeal, the Legislature has amended this statute; such amendments, however, do not affect the statutory language at issue herein. Compare W. Va.Code § 11-15A-10a(a) (2003) (Supp. 2003) with W. Va.Code § 11-15A-10a(a) (1986) (Repl.Vol.2002).
[3] In 2000, Bluestone Paving, Inc., ceased operations.
[4] From the record, it appears that the 4 1/2% sales tax was actually comprised of two different taxes: a 3 1/2% sales tax payable to the Commonwealth of Virginia and a 1% sales tax payable to the City of Bluefield, Virginia, where the Pounding Mills quarry is located. In response to Bluestone's initial claim for credit, the Tax Commissioner rejected Bluestone's claim in its entirety finding W. Va.Code § 11-15A-10a(a) permits only credits for taxes paid to other states rather than for taxes paid to local governments within other states. At the administrative level, however, the fact that Bluestone had, in fact, paid taxes not just to the City of Bluefield, Virginia, but also to the Commonwealth of Virginia was clarified. Following this corrective statement in the administrative law judge's order, however, it appears that the parties have since abandoned their dispute as to whom Bluestone paid the allegedly refundable taxes and that their focus is now for what Bluestone paid such taxes.
[5] This 4 1/2% sales tax figure was based upon the total purchase price of gravel Bluestone purchased from the Pounding Mills quarry, i.e., $1,161,961.91.
[6] This value takes into consideration the costs of the asphalt's various aggregates (raw materials), e.g., gravel, sand, and petroleum products, as well as the value resulting from the asphalt manufacturing process, itself.
[7] See infra Section III for the pertinent statutory language.
[8] See supra note 2.
[1] Also, in recent years West Virginia has, by statute or by agreement with neighboring states, extended its collection efforts of either sales or use taxes to cover many interstate transactions. Nevertheless, enforcement of the use tax is, and always has been, uneven, arising from several factors, including (1) administrative inability or reluctance to pursue West Virginia residents, (2) individual legislators urging administrators not to enforce the tax in some areas, and (3) the current congressional directive forbidding states to tax certain internet transactions. The historical record of uneven enforcement presents an interesting contrast to the Tax Commissioner's zeal in this case.
[1] In actuality, the Commonwealth of Virginia levied only a 3 1/2% sales tax on Bluestone's purchase of the gravel. The remaining 1% sales tax was imposed by the City of Bluefield, Virginia.
[2] I reiterate, however, that this is not the factual scenario before us.