IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 18-1106

_____

**FILED**
**November 17, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ANTERO RESOURCES CORPORATION,
Petitioner

v.

DALE W. STEAGER, as STATE TAX COMMISSIONER of WEST VIRGINIA,
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Charles E. King, Jr.
Civil Action No. 18-AA-218

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

_____

Submitted:  October 6, 2020
Filed:  November 17, 2020

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, WV
Craig A. Griffith, Esq.
L. Frederick Williams, Esq.
John J. Meadows, Esq.
Steptoe & Johnson PLLC
Charleston, WV
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
L. Wayne Williams, Esq.
Assistant Attorney General
Charleston, WV
Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in W. Va. Code § 29A-5-4(g) [1988].  Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo*."  Syllabus Point 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012).

2.      "The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis."  Syllabus Point 3, *In re Queen,* 196 W. Va. 442, 473 S.E.2d 483 (1996).

3.      Pursuant to the plain language of W. Va. Code § 11-15-2(b)(4), "[d]irectly used or consumed  … in the production of natural resources means used or consumed in those activities or operations which constitute an integral and essential part of the activities, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to the activities."

i

4.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation. Syllabus point 2, *State v. Elder,* 152 W. Va. 571, 165 S.E.2d 108 (1968)." Syllabus Point 3, *Bluestone Paving, Inc., v. Tax Commissioner of the State of West Virginia,* 214 W. Va. 684, 591 S.E.2d 242 (2003).

5.     "[A properly promulgated legislative rule] "can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious." Syllabus Point 4, in part, *Appalachian Power v. State Tax Department,* 195 W. Va. 573, 466 S.E.2d 424 (1995).

ARMSTEAD, Chief Justice:

Petitioner Antero Resources Corporation ("Antero") appeals the November 15, 2018 order issued by the Circuit Court of Kanawha County reversing the decision of the Office of Tax Appeals ("OTA"), which reimposed a sales and use tax assessment against Antero for purchases/rentals of certain tangible personal property and services from January 1, 2011, through December 31, 2013. On appeal, Antero argues that the circuit court erred by determining that certain purchases of tangible personal property and services made by it were not directly used in its natural resource production and, therefore, did not qualify for the direct use exemption under West Virginia Code § 11-15-9(b)(2) and 11-15A-3(a)(2) (the "Direct Use Exemption").

Upon consideration of the parties' briefs and oral arguments, the submitted record, and the applicable authorities, this Court finds that Antero is entitled to the Direct Use Exemption for the following: (1) crew quarters and related equipment; and (2) portable toilets, sewage systems, related water systems, and septic cleaning charges. However, we find that Antero is not entitled to the Direct Use Exemption for the rentals of trash trailers and waste receptacles. Accordingly, the circuit court's final order is affirmed in part, reversed in part and remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Antero is engaged in the exploration, development and acquisition of natural gas and oil from properties located in the Appalachian Basin. Antero has been producing natural gas from wells in the State of West Virginia since 2008. It appears undisputed that

1

Antero purchases or rents various items and services from vendors. Specific to the instant appeal, Antero rents items and purchases services in the following three categories: (1) crew quarters and related equipment; (2) portable toilets, sewage systems, related water systems, and septic cleaning charges; and (3) trash trailers and waste receptacles.

On December 19, 2014, the Auditing Division of the West Virginia State Tax Commissioner's Office ("Tax Department" or "Respondent") issued two Notices of Assessment against Antero for the period of January 1, 2011, through December 31, 2013.[1] The assessments included the purchases/rental of three categories of tangible personal property and services utilized by Antero in its horizontal drilling operations: (1) crew quarters and related equipment; (2) portable toilets, sewage systems, related water systems, and septic cleaning charges; and (3) trash trailers and waste receptacles. The assessment was based on the fact that Antero did not pay sales or use tax on purchases or rentals of the above-referenced items. Within one month of receiving the assessment, Antero paid the assessment in full but did so under protest. These assessments were timely appealed to the OTA.

An evidentiary hearing on Antero's appeal was held before the OTA on May 5, 2016. At the hearing, Alvyn Schopp, Chief Administrative Officer, Regional Senior

---

[1] The tax assessments were issued as follows: (1) one assessment for $1,072,003.92 plus interest against Antero Resources; and (2) one assessment for $1,058.25 plus interest against Antero Resources Bluestone. Subsequently, the two corporations merged and the administrative hearings were combined. Antero appealed only a portion of the Antero Resources Assessment, but it appealed the full amount of the Antero Resources Bluestone assessment. The OTA consolidated the two combined Consumers Sales Tax and Use Tax assessments.

Vice President and Treasurer of Antero and Evelyn Furbee, Tax Unit Supervisor II of the Tax Department, provided testimony.

The OTA issued its Final Decision on April 3, 2018. In its Final Decision, the OTA modified the two assessments so that the total liability owed by Antero for the period January 1, 2011, through December 13, 2013 was $25,613.82 as opposed to the initial assessment, which was in excess of $1,000,000. The OTA concluded that Antero's rental of the items in the following categories – (1) crew quarters and related equipment and (2) portable toilets, sewage systems, related water systems and septic charges (3) trash trailers and waste receptacles, were all exempt from tax because the rentals were integral and essential to Antero's operations. The Tax Commissioner appealed the decision of the OTA to the Circuit Court of Kanawha County.

By order entered November 15, 2018, the circuit court reversed the decision of the OTA and affirmed the original tax assessments, which held that the purchases and rentals at issue were not subject to the Direct Use Exemption. The circuit court concluded that oral argument was not necessary to decide the issues on appeal and relied upon the pleadings, the administrative decision, statutory language, and the prevailing case law in making its ruling. The circuit court found that the Tax Department correctly applied the Consumers Sales Tax and the applicable legislative rules. With respect to the crew quarters and related equipment, the circuit court found that "nothing in the statutory language or the legislative rule … indicates the WV Legislature has classified restrooms, bedrooms, kitchenettes, TV Lounges, as (sic) breakrooms, as being directly used on (sic) the production of natural resources." With respect to portable toilets, sewage systems, related

3

water systems, and septic cleaning charges, the circuit court found that Respondent had correctly assessed the Consumer Sales Tax on those items because the "direct use exemption and the legislative rule do not include any language authorizing or even suggesting such an exemption." With respect to the rentals of trash trailers and waste receptacles, the circuit court found that the "only waste put into the receptacles was from the living areas, kitchenettes, and bedrooms of the Crew Quarters which were not directly used in the production of natural resources." Finally, the circuit court concluded that the OTA's decision essentially "re-wrote" the statutory exemption at issue in this case. For these reasons, the circuit court reversed the administrative decision issued by the OTA.

This appeal by Antero followed.

## II. STANDARD OF REVIEW

The standard of review applicable to Antero's appeal can be found in Syllabus Point 1 of *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012):

> In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in W. Va. Code § 29A-5-4(g) [1988]. Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound discretion, this Court will review questions of law *de novo*.

West Virginia Code § 29A-5-4(g) provides, in relation to the circuit court's review:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions decision or order are:
>
> (1)    In violation of constitutional or statutory provisions; or
> (2)    In excess of the statutory authority or jurisdiction of the agency; or
> (3)    Made upon unlawful procedures; or
> (4)    Affected by other error of law; or
> (5)    Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (6)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Further, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

With these standards in mind, we turn to the parties' arguments.

### III.  DISCUSSION

This matter involves what is commonly referred to as the Direct Use Exemption to the Consumers Sales and Service Tax. Simply put, Antero argues that it is entitled to the Direct Use Exemption for purchases and rentals of certain tangible property and services, and the Tax Department disagrees.

5

We begin our analysis with a discussion of the applicable law regarding the taxes and exemption at issue. The State of West Virginia imposes a general consumers sales and service tax. *See* W. Va. Code § 11-15-1 et seq. "To prevent evasion [of this tax], it is presumed that all sales and services are subject to the tax until the contrary is clearly established." W. Va. Code § 11-15-6(b). The Direct Use Exemption for the Consumer Sales and Service Tax article provides,

> [t]he following sales of tangible personal property and services are exempt from tax as provided in this subsection:
> …
> (2) Sales of services, machinery, supplies and materials **directly used or consumed in the activities of** manufacturing, transportation, transmission, communication, **production of natural resources**, gas storage, generation or production or selling electric power, provision of a public utility service or the operation of a utility service or the operation of a utility business, in the businesses or organizations named in this subdivision and does not apply to purchases of gasoline or special fuel;

W. Va. Code § 11-15-9(b)(2) (emphasis added). The phrase "directly used or consumed" is defined as:

> "Directly used or consumed" in the activities of manufacturing, transportation, transmission, communication or the production of natural resources means used or consumed in those activities or operations which constitute an integral and essential part of the activities, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to the activities.

W. Va. Code § 11-15-2(b)(4). This particular section further provides a list of fourteen uses of property or consumption of services which constitute direct use or consumption and a list of six uses of property or services which do not constitute direct use or

6

consumption. Those uses that constitute direct use or consumption are exempt from sales and use tax pursuant to the statute.[2]

We will now turn our attention to the three categories of tangible personal property and services that are at issue in the instant appeal.

A.    CREW QUARTERS AND RELATED EQUIPMENT

The assessments at issue concerning crew quarters and related equipment include portions of rentals of crew quarters and the generators, transformers and electrical and water hook ups necessary to make the crew quarters usable.   In assessing this category, the Tax Department determined that approximately one-third (32.4324%) of the square footage for the crew quarters was used as office space and therefore exempted from tax. More specifically, the Tax Department concluded that the office space was exempted from sales and use tax because it was directly used in the natural resource production activities since workers assist with "steering the well" from that space.  That same percentage was applied to the generators, transformers and electrical and water hook ups for the skid house/crew quarters.  The remaining portions of the crew quarters and related equipment, described as "living quarters" were treated by respondent as being subject to tax because those portions were not used directly in the drilling process.  The living quarters include bedrooms, bathrooms, kitchen and dining areas and living room/lounge areas.  The portion

_____

[2] The Direct Use Exemption also applies to use tax.  *See* W. Va. Code § 11-15A-3.

of the rental charges that were classified as exempt under the direct use exemption were not included in the assessment.[3]

The key question to be answered with respect to this category is whether the crew quarters and related equipment were directly used in the production of natural resources. Directly used or consumed in the production of natural resources "means used or consumed in those activities or operations which constitute an integral and essential part of the activities, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to the activities." W. Va. Code § 11-15-2(b)(4).

We begin our analysis by looking at the individuals who actually used the crew quarters. We agree with the OTA that the testimony regarding the various personnel on the well site was "a bit muddled." Antero notes that during the period in question in this appeal, the crew quarters were only used by the "company men" and "directional drillers." Antero describes a "company man" as "an independent contractor paid by Antero to ensure that all of the workers on site are performing their respective duties in accordance with the law and Antero's expectations." According to Antero, a company man remained on the well site around the clock and slept in the crew quarters from January of 2011

_____

[3] "It is possible for an item to be used in both a taxable or [sic] exempt manner. In such instances, apportionment of the tax may be necessary." W. Va. Code R. § 110-15-123.4.3.8.

8

through November of 2012.[4]  Antero describes "directional drillers" as independent contractors who spend much of their time at the well site "steering the well" and completing other necessary drilling functions from the crew quarters.  Antero also maintains that the directional drillers use dedicated space within the crew quarters to sleep, bathe, and perform other everyday activities.  With respect to the directional drillers, Antero keeps two directional drillers on-site at all times.  During the two weeks that the directional drillers are working, they trade shifts between day and night, but they do not leave the well site.

Antero argues that maintaining crew quarters and related equipment at each well site is an integral and essential part of the production activities at each well site because these resources are necessary to allow individuals to remain at the drill site in order to satisfactorily perform their duties.  Further, the crew quarters and related equipment were used exclusively by individuals who are essential to the drilling activities and who are required (or in the case of the company men, were required until November of 2012) to remain at the drill site around the clock.

The Tax Department counters that the living quarters portion of the crew quarters does not qualify for the Direct Use Exemption because those areas are not directly used in the production of natural resources.  In support of its argument, the Tax Department relies upon West Virginia Code § 11-15-2(b)(4)(B), which provides:

---

[4] From November of 2012 through December of 2013, Antero used two company men for each well site.  During this time period, each company man worked twelve-hour shifts and then left the well site so they did not use the crew quarters for sleeping, bathing, food preparation or other everyday activities during this time.

Uses of property or services which do not constitute direct use or consumption in the activities of manufacturing, transportation, transmission, communication or the production of natural resources include, but are not limited to:

(i)     Heating and illumination of office buildings;
(ii)    Janitorial or general cleaning activities;
(iii)   Personal comfort of personnel;
(iv)    Production planning, scheduling of work or inventory control;
(v)     Marketing, general management, supervision, finance, training, accounting and administration; or
(vi)    An activity or function incidental or convenient to transportation, communication, transmission, manufacturing production or production of natural resources, rather than an integral and essential part of these activities.

More specifically, the Tax Department argues that kitchen and dining areas and bedrooms are provided for the personal comfort of personnel and if this Court is unpersuaded by that argument, then those areas should be viewed as being "incidental or convenient" to the production of natural gas.

In order to qualify for the Direct Use Exemption, the crew quarters and related equipment must be directly used or consumed in the production of natural resources. We hold now that pursuant to the plain language of W. Va. Code § 11-15-2(b)(4), "[d]irectly used or consumed … in the production of natural resources means used or consumed in those activities or operations which constitute an integral and essential part of the activities, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to the activities." The crew quarters and related equipment were used by the directional drillers and the company men (for a specific period of time during the audit period). The directional drillers remained on-site for two weeks at a time. Although they spent much of their time at the well site, they also

10

completed other necessary drilling functions from the crew quarters. When they were not on shift during the two-week period, they were still required to remain at the well-site so they used the living quarters to sleep, bathe and perform other everyday activities during that time.[5] We are not persuaded by the Tax Department's argument that these items were for the personnel comfort of personnel. Mr. Schopp testified that the crew quarters were "singlewide trailer[s]" that are "worse than your worst hotel." Further, the crew quarters and related equipment were not incidental or convenient to Antero's production activities. They were necessary to allow directional drillers and company men to remain on-site to perform ongoing work related to the operation and monitoring of the drilling operations.

In support of its conclusion that the crew quarters and related equipment qualify for the Direct Use Exemption, the OTA concluded that the evidence in this case did not support the Tax Department's argument that these items were for the personal comfort of personnel or for convenience. In fact, the OTA made specific findings about the critical job performed by the directional drillers, and the need for the second directional driller, who is not technically on shift, to be constantly available for consultation regarding computer programming of where the drill bit may be headed. The circuit court found that the OTA decision in this regard "violates the Administrative Procedures Act on several fronts." We do not agree.

West Virginia Code § 11-15-2(b)(4)(A) provides thirteen specific categories of expenses that qualify for the Direct Use Exemption. As the circuit court noted,

---

[5] The directional drillers either worked a day shift or a night shift during their two weeks of work.

"[t]he specific categories run the gamut from machinery and equipment causing a physical change upon property undergoing manufacturing production or the production of natural resources; to directing the physical movement of the production of natural resources; to producing energy used in the production of natural resources; and to pollution control equipment utilized in the eight specific industries."

*See* W. Va. Code §§ 11-15-2(b)(4)(A)(ii); 11-15-2(b)(4)(A)(v); 11-15-2(b)(4)(A)(vii); and 11-15-2(b)(4)(A)(xii). In addition to the thirteen specific categories, this section also contains a "catch-all" category that provides an exemption for, "[o]therwise using as an integral and essential part of transportation, communication, transmission, manufacturing production or production of natural resources." *See* W. Va. Code § 11-15-2(b)(4)(A)(xiv).

We do not agree with the OTA that the statutory language in West Virginia Code § 11-15-2(b)(4)(A) is confusing nor do we believe that the OTA created a new standard inconsistent with the statute in rendering its decision in this case. The catch-all provision of West Virginia Code § 11-15-2(b)(4)(A)(xiv) supports the OTA's decision. The Tax Department argues that this catch-all provision should be examined in light of the thirteen types of activities specified in the statute as opposed to on its own. In other words, the Tax Department argues that, in order to qualify as an exemption under the "catch-all" provision, an expense must first fall within one of the thirteen specific categories enumerated prior to the "catch-all" provision. If this were true, however, there would be little need for a more encompassing provision including the language "otherwise using as an integral and essential part" of the production of natural resources. Indeed, Black's Law Dictionary defines "otherwise" as "in a different way; in another manner; by other causes or means." *Otherwise,* Black's Law Dictionary (11th ed. 2019). This statute is clear and

12

unambiguous. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation. Syllabus point 2, *State v. Elder,* 152 W. Va. 571, 165 S.E.2d 108 (1968)." Syllabus Point 3, *Bluestone Paving, Inc., v. Tax Commissioner of the State of West Virginia,* 214 W. Va. 684, 591 S.E.2d 242 (2003). We do not agree that the catch-all provision contained in subsection (A)(xiv) is dependent upon the other uses.

We find that under the facts presented in this case, the crew quarters and related equipment were an integral and essential part of Antero's production activity, and as such, these items were directly used in the production activity. Therefore, we conclude that these items qualify for the Direct Use Exemption.[6]

For the foregoing reasons, we reverse the circuit court's order with respect to crew quarters and related equipment.

B.    PORTABLE TOILETS, SEWAGE SYSTEMS, RELATED WATER SYSTEMS, AND SEPTIC CLEANING CHARGES

The assessments at issue in this category include rentals of portable toilets, rentals of conex weatherized water and sewer boxes that are used to service the crew quarters, purchases of potable water for the bathroom facilities, and purchase of services to clean the well site septic systems.

---

[6] Because we find that the crew quarters and related equipment are directly used in Antero's production of natural resources, we need not address Antero's other arguments in support of its position.

Antero advances several arguments as to why the items in this category are exempt from tax. Specifically, Antero argues that these items can qualify because 1) they can be treated as pollution control or environmental quality or protection activities pursuant to West Virginia Code § 11-15-2(b)(4)(A)(xiii); 2) they can be treated as personnel, plant, product or community safety activities pursuant to West Virginia Code § 11-15-2(b)(4)(A)(xiii); or 3) they are integral and essential parts of the production of natural resources pursuant to West Virginia Code § 11-15-2(b)(4)(A)(xiv). The Tax Department reiterates its argument that the OTA improperly applied West Virginia Code § 11-15-2(b)(4)(A)(xiv) and created a new test to determine whether these expenses qualify for the Direct Use Exemption.

The OTA concluded that these items are integral and essential to Antero's natural gas drilling operations and therefore, exempt. In reversing the OTA's decision, the circuit court concluded that the OTA had ignored obvious language from the statute and the legislative rule in reaching its conclusion.

In order to qualify for the Direct Use Exemption, the portable toilets, sewage systems, related water systems, and septic cleaning charges must be directly used or consumed in the production of natural resources. West Virginia Code § 11-15-2(b)(4) provides,

> "Directly used or consumed" in the activities of manufacturing, transportation, transmission, communication or the production of natural resources means used or consumed in those activities or operations which constitute an integral and essential part of the activities, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to the activities.

14

The parties put forth various arguments in support of their positions as to why these items qualify or do not qualify for the Direct Use Exemption. However, we believe that this particular decision is straightforward. These items are located at remote well sites, and it would be impractical if not impossible for Antero to operate its well sites without making bathroom facilities available. These facilities, in the context of isolated drilling sites, are not "simply incidental, convenient or remote" to the drilling activities as provided in West Virginia Code § 11-15-2(b)(4). Indeed, it is difficult to imagine how such operations could proceed without such facilities. The OTA found that these items are integral and essential. We agree.[7]

When looking at the facilities at issue in this category, we are aware of OSHA regulations imposed upon Antero and contractual obligations that Antero has entered into as part of its operations. However, while these facts lend additional support to Antero's position, we believe that such facilities, particularly in remote settings such as are present here, are not merely for the "personal comfort of personnel."[8] In fact, they are "integral and essential" to such operations. The terms "integral and essential" as they relate to the Direct Use Exemption, are not defined by either the West Virginia Code or the legislative

---

[7] We are not persuaded by the Tax Department's description of the OTA decision as having "only devoted one single page to the issue" nor do we believe that the OTA "simply concluded that the rental charges should be exempt from consumers sales tax because the federal Occupational Safety and Health Administration regulations ("OSHA") require Antero to provide bathroom facilities for its workers."

[8] *See* W. Va. Code § 11-15-2(b)(4)(B)(iii).

15

rules. "On occasion, however, such as the case *sub judice,* the language used by the Legislature may be plain but it may have neglected to define a certain word or words used therein." *Bluestone Paving, Inc.* at 689, 591 S.E.2d at 247. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." *State ex rel. Prosecuting Attorney of Kanawha County v. Bayer Corp.,* 223 W. Va. 146,157, 672 S.E.2d 282, 293 (2008), citing Syl. Pt. 1, *Miners in Gen Group v. Hix,* 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee-Norse Co. v. Rutledge,* 170 W. Va. 162, 291 S.E.2d 477 (1982). Black's Law Dictionary defines "essential" as "of, relating to, or involving the essence or intrinsic nature of something." *Essential,* Black's Law Dictionary (11th ed. 2019).

Based upon our determination of the commonly accepted meaning of essential and the facts presented in this case, we find that the sewage systems, related water systems, and septic cleaning charges are an integral and essential part of Antero's production activity, and as such, these items were directly used in the production activity. It is difficult to imagine how the drilling operations could proceed without such facilities. Therefore, we conclude that these items qualify for the Direct Use Exemption.[9]

For the foregoing reasons, we reverse the circuit court's order with respect to portable toilets, sewage systems, related water systems, and septic cleaning charges.

---

[9] Because we find that the portable toilets, sewage systems, related water systems, and septic cleaning charges are directly used in Antero's production of natural resources, we need not address Antero's other arguments in support of its position.

16

C.      TRASH TRAILERS AND WASTE RECEPTACLES

The assessments at issue in this category include rentals of trash bins and trailers that Antero argues are "necessary to dispose of trash that is created at the well site." The Tax Department found the rentals of the trash bins and trailers to be entirely taxable, and the OTA concluded that the charges associated with these rentals were exempt. The testimony regarding these rentals was somewhat confusing. Mr. Schopp testified that at least 90% of the waste disposed of in these receptacles was "commercial waste." However, Ms. Furbee testified that it was the Tax Department's understanding that "it was the types of waste that Mr. Schopp testified to, as far as being just the regular waste from the trailers, as well as something that could have been packaging" and "[w]e were under the impression there's no mud products in those bins[.]"

In support of its argument before the OTA, the Tax Department argued that West Virginia Code of State Rules § 110-15-123.3.1.12 required the waste in the disputed receptacles to be the "direct" result of drilling. The legislative rule at issue provides,

> 123.3.1  Uses of Property or Services Constituting Direct Use – Uses of property or services which will constitute direct use when used by a person engaged in the business of manufacturing, transportation, transmission, communication or the production of natural resources, thereby making its purchase exempt from the sales and use tax shall include only the following:
>
> 123.3.1.12.  Tangible personal property or services used in the storage, removal or transportation of economic waste directly resulting from the activities of transportation, communication, transmission, manufacturing production, production of natural resources, or in contracting activity during the period July 1, 1987 to February 28, 1989.  For example, trash bins used to

17

> store waste directly resulting from manufacturing are directly
> used in manufacturing.

W.V.C.S.R. § 110-15-123.3.1 (1993).

The OTA concluded that section 123.3.1.12 "clearly exceeds its legislative authority" by "impermissibly expand[ing] West Virginia Code 11-15-2." Specifically, the OTA found that the legislative rule in question exceeded its legislative authority because it requires the waste to be the "direct" result of the activity in question, and this requirement is not found in West Virginia Code § 11-15-2(b)(4)(A)(xii). The OTA noted that removing the word "direct" from the legislative rule would result in "all the waste from the well pad" being subject to the Direct Use Exemption.

The Tax Department argues that Section 123.3.1.12 is proper because it reflects the language in the statute. We agree. West Virginia Code § 11-15-2(b)(4)(A)(xii) provides that the following use constitutes direct use or consumption: "[s]toring, removal or transportation of economic waste *resulting from* the activities of manufacturing, transportation, communication, transmission or the production of natural resources." (emphasis added). Although this statute does not include the words "directly related," it expressly provides that the waste must *result from* one of the enumerated industries – in this case, the production of natural resources.

A properly promulgated legislative rule "can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious. Syl. Pt.

18

4, in part, *Appalachian Power v. State Tax Department,* 195 W. Va. 573, 466 S.E.2d 424 (1995). Section 123.3.1.12. does not exceed its statutory authority.[10]

We are not convinced by the evidence in this matter that the primary use of the receptacles was directly related to the waste resulting from the production of natural resources. In light of the intent reflected by the statute and the legislative rule interpreting the statute, we do not believe the receptacles meet the definition of "directly used or consumed" in the drilling process.

We acknowledge that the term "directly" as used in the statute involves a factual determination as to when a particular use is so remote that it does not constitute a direct use. Accordingly, unlike the crew quarters, portable toilets, sewage system and water systems, which we have found to be direct uses exempt from the sales and use tax, we do not believe circuit court erred when it determined that the trash receptacles fail to meet the standards to qualify for such exemption. As noted above, the legislative rule appears to define the scope of trash receptacles that are exempt to those "used to store waste directly resulting from … the production of natural resources." W.V.C.S.R. § 110-15-123.3.1 (1993). Therefore, we do not believe the circuit court was clearly wrong in finding that the trash trailers and waste receptacles did not fall within the exemption permitted by W. Va. Code § 11-15-9(b)(2).

---

[10] We are further unpersuaded by any of the additional arguments advanced by Antero in support of its position that the trash trailers and waste receptacles qualify for the Direct Use Exemption.

For the foregoing reasons, we affirm the circuit court's order with respect to trash trailers and waste receptacles.

## IV. CONCLUSION

For the reasons set forth above, the November 15, 2018 order of the circuit court in this matter is affirmed in part, reversed in part, and the case is remanded for entry of an order consistent with this opinion.

Affirmed in part, and reversed in part, and remanded.

20